452 F.Supp. 944 (1977)
Albert H. CARTER
v.
TELECTRON, INC.[*]
Civ. A. No. 71-H-944.
United States District Court, S. D. Texas, Houston Division.
December 16, 1977.

*945 *946 MEMORANDUM AND OPINION
CARL O. BUE, Jr., District Judge.

I. INTRODUCTION
This is a case of first impression in this Circuit, so far as this Court can determine, involving the practices employed in the filing and processing of civil lawsuits by one who is unquestionably the most litigious prisoner in the Southern District of Texas. The questions before the Court are: (1) should the 17 causes of action dismissed by this Court on March 7, 1977, for failure of plaintiff, Albert H. Carter, a felon incarcerated at the Texas Department of Corrections (TDC), to pay filing and service fees as ordered be reinstated under the in forma pauperis provisions of 28 U.S.C. § 1915; (2) if not reinstated, should the previous dismissals be construed to be with or without prejudice, and (3) in light of certain practices of plaintiff which have come to the attention of this Court and are documented in this Memorandum and Opinion, should plaintiff's ready, cost-free access to the courts based on the privilege of proceeding in forma pauperis without prepayment of fees under Section 1915 be more closely monitored pursuant to 28 U.S.C. §§ 1651 and 1915 in light of his continuing abuse of this privilege and the judicial process?

A. Albert Carter as a Pro Se Litigant
An analysis of the 178 cases currently known to have been filed by plaintiff throughout the country which this Court has documented in order to resolve the questions presented, see List of Cases, Part III.B.1., infra, illustrates that Carter is a proficient pro se litigant with 15 years experience. His abilities, however, on the whole have directed him not in the bona fide pursuit of meritorious causes, but rather, as documented in this opinion, toward the perpetual exploitation, abuse and harassment of the judicial system and various defendants who have figured in his life over the past two decades.
Carter's long list of problems, which serve as the fount for his many suits, began while he was a United States Air Force officer. As described in detail in Carter v. United States, 509 F.2d 1150, 206 Ct.Cl. 61 (1975), modified, 518 F.2d 1199, cert. denied, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976), and Carter v. United States, 325 F.2d 697 (5th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308 (1964), Carter, during his 12 year tenure in the Air Force from 1948 to 1960, performed with distinction as a bombardier-navigator. His creditable record, however, faded rapidly into censure during 1959. It was during that period that he came under suspicion by law enforcement authorities for a series of criminal acts involving fraud and was *947 placed in mental hospitals for examination and treatment, where, among other things, he committed a severe act of self-mutilation. Carter thereafter was discharged from the Air Force in December of 1960. His difficulties spilled over into the civilian world where they continued unabated and eventually led to a life sentence in the Texas Department of Corrections as a habitual criminal offender, his convictions being based on perjury and embezzlement.
Since his incarceration Carter has been a prolific litigant, but he scarcely fits the usual mold. The typical inmate who believes that he possesses a meritorious claim, being inarticulate and unschooled in the law, plods slowly along an unfamiliar path of legal rules and procedures. He is in need of the liberal protection embodied in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). On the other hand, although Carter uses the common tools available to a prisoner in filing pro se and in forma pauperis, he is an uncommon prisoner litigant. First of all, as indicated by the List of Cases in Part III.B.1., infra, Carter has been an active litigant since the time of his Air Force discharge in 1960, years prior to the sudden rise in prisoner litigation of this decade and his incarceration as an habitual criminal in 1972. It is indeed important to note that the earliest suits located by this Court, brought in the spring of 1961, were filed pro se and in forma pauperis. See List of Cases, Nos. 120, 144 thru 149.
Secondly, Carter is unlike most pro se prisoner litigants in that many of his actions, and most of those which are repetitious of earlier filings, are not civil rights actions based on the conditions of his confinement but are based on facts stemming from events which occurred prior to his present incarceration, commencing with his Air Force discharge and thereafter relating to other employments, business dealings and criminal difficulties. Thus, the bulk of Carter's filings represent a number of lengthy private wars and vendettas which Carter has carried out at no monetary expense to himself pursuant to 28 U.S.C. § 1915.[1] For example, he has filed 12 actions over a 15-year period against the United States and Air Force officials challenging numerous matters connected with his discharge from the Air Force. See List of Cases, Nos. 120 thru 131. In one of these recently-filed actions, see List of Cases, No. 131, Judge John H. Pratt, United States District Judge for the District of Columbia, dismissed plaintiff's complaint against the United States on the grounds of res judicata, noting that:
"[t]his action seems particularly appropriate for applying the doctrine of res judicata. The purpose of that doctrine is to eliminate needless repetitive litigation. This case is a paradigm of needless repetitive litigation. It has gone on for over 14 years and involved the energies of at least six courts, not to mention the thousands of hours of time expended by countless civil servants."
Carter v. United States, (Memorandum and Order, C.A. 76-1181, August 4, 1977, at 4); see Supplemental File, Exhibit A.
Judge Pratt's appraisal of Carter's litigation on his Air Force discharge, while emphasizing its typically duplicative, harassing nature, also suggests the major difference between Carter and other prisoner litigants. That is, Carter as a pro se plaintiff has an extensive working knowledge of the substantive law and procedural rules in areas *948 of interest for purposes of his litigation.[2] Given Carter's easy access to the federal court through Section 1915, the de-centralized and uncoordinated court system has been an easy target for a litigant who, although schooled in the law, lacks the requisite good faith in implementing its use. Thus, by abusing the Section 1915 privilege which allows a pauper to bring causes of actions without prepayment of fees, and deliberately circumventing fundamental procedural rules, as is hereafter documented in Part III., infra, Carter has succeeded in (1) prosecuting duplicate actions simultaneously in multiple courts, (2) obtaining default judgments through the use of techniques designed to avoid actual service of process on a defendant, (3) conducting ex parte litigation made possible by his acknowledged failure to serve pleadings on opposing parties, (4) misrepresenting his status as a pauper for purposes of the Section 1915 determination to this and other courts, (5) varying allegations of state citizenship for purposes of federal diversity jurisdiction to fit the necessities of a particular case and (6) submitting pleadings and documents in legal proceedings which upon inspection and comparison raise the spectre of forgery.
The case filings and related practices documented in this opinion necessarily have raised questions as to the merits of any of his 99 complaints heretofore filed in this District and the truthfulness of the allegations contained therein. In addition to his own standing in this and other courts in this District, Carter also has jeopardized the cause of other prisoner litigants. Because he has filed more than double the number of complaints in the Southern District as any other prisoner litigant, he necessarily has become a focal point for scrutiny and control both by the Staff Law Clerk and this Court, thereby shifting judicial resources away from other prisoner litigants who are prosecuting causes of action in good faith. Although it is apparent from the sheer bulk of material contained herein that the entire judicial process is treated as akin to a game by Carter, heretofore financed at the expense of the public, the abuses of such process and the Section 1915 privilege which are described in this opinion are viewed most seriously by this Court; indeed, they call for immediate, responsive remedial measures aimed at controlling any further manifestations through the judicial outlet of Carter's hostility and pique.

B. Need for Effective Control of Multiple Filers Such as Plaintiff
The number of cases filed by prisoners has increased dramatically in this decade. Total prisoner petitions, both civil rights and habeas corpus, climbed to almost 20,000 nationwide for the 12-month period ending June 30, 1977, compared to approximately 16,000 petitions for the year 1972, thus representing a 25 percent increase in the last five years. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, THE UNITED STATES COURTS: A PICTORIAL SUMMARY THROUGH THE TWELVE-MONTH PERIOD ENDING JUNE 30, 1977, at 14 (hereafter "THE UNITED STATES COURTS: A PICTORIAL SUMMARY"); see FEDERAL JUDICIAL CENTER, RECOMMENDED PROCEDURES FOR HANDLING PRISONER CIVIL RIGHTS CASES IN THE FEDERAL COURTS (Tentative Report No. 2, 1977), at 6 (hereafter "Aldisert Report No. 2"). Additionally, as of June 30, 1977, actions brought by state and federal prisoners represented 15 percent of all pending civil cases in the federal courts, the second largest category behind contract actions at 18 percent. THE UNITED STATES COURTS: A PICTORIAL SUMMARY, at 13. In the Southern District of Texas and other district courts whose jurisdiction encompasses *949 a large prison population, the percentages obviously are higher. For example, a detailed study recently completed by the Administrative Office indicates that the filing of prisoner civil rights complaints in four such districts, namely the Southern District of Texas, Middle District of Pennsylvania, Middle District of Florida and District of Maryland, grew by a whopping 43 percent in the two-year period between June 30, 1975, and June 30, 1977, twice the average growth rate for the remaining 90 districts.
The above figures are of great concern to the judges who sit in the Houston Division of the Southern District of Texas. This is an extremely busy court in a rapidly growing metropolitan area. The average caseload per court in this division now fluctuates between 650 and 700 civil cases, one of the largest in the country, in addition to a sizable criminal docket. Thus, a premium must be placed on the efficient use of judicial time in all areas of the docket in order to move this caseload towards a timely disposition.
However, because of the unique nature of prisoner litigation, it is difficult to process and dispose of these suits in an efficient manner. The fact that prisoner actions generally are brought pro se poses considerable problems in screening. Additionally, it is axiomatic that for many prisoners a belief in the merits of one's case is frequently not the motivating force behind the filing. Instead,
"[t]he usual restraint on unwarranted litigation, expense, is absent in a field where prisoners can usually proceed in forma pauperis and where the expenditure of time in preparation is a welcome relief from the tedium of prison life."
Aldisert Report No. 2, at 3. See, e. g., Jones v. Bales, 58 F.R.D. 453, 463 (N.D.Ga. 1972), aff'd per curiam, 480 F.2d 805 (5th Cir. 1973). Given this potential motivation, a court many times will be expending its energies on a lawsuit which, although legally sufficient on its face to state a cause of action, has no factual basis. Thus, although statistical studies have shown that most prisoner cases are in fact frivolous, see Aldisert Report No. 2, at 7, it is difficult under present standards of review to weed out on the basis of the pleadings alone the nonmeritorious suits, particularly given the liberality to be accorded pro se pleadings. As noted in Jones v. Bales, supra at 464:
"[a] reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit."
Prisoner litigants such as plaintiff who, by filing a large number of actions, abuse the privilege of proceeding pro se and in forma pauperis pursuant to Section 1915 have created and continue to create an unjustifiable waste of judicial resources expended to process and dispose of these actions. The problems, both legal and administrative, posed to this and other federal district courts by these multiple filers cannot be overemphasized. See, e. g., Green v. Garrott, 71 F.R.D. 680 (W.D.Mo.1976) (minimum of 219 actions filed by plaintiff); Dickinson v. French, 416 F.Supp. 429 (S.D.Ala. 1976) (minimum of 44 actions filed by plaintiff); Ex parte Tyler, 70 F.R.D. 456 (E.D. Mo.1975) (18 actions filed by plaintiff on same set of facts). See generally Aldisert Report No. 2.
The Staff Law Clerk for this District has estimated that roughly 20 prisoners out of an approximate prison population of 22,000 persons account for 50 percent of the nonhabeas prisoner actions filed in this District. Compounding the inordinate amount of time which must be spent on the filings by these few litigants is the fact that many of the causes of action are repetitious of or related to earlier actions, although typically this is not disclosed in the newer complaint. See, e. g., Hill v. Estelle, 423 F.Supp. 690 (S.D.Tex.1976). As a result of their efforts, multiple filers such as plaintiff have effectively *950 placed a severe handicap on any meaningful effort by this and other courts to single out those cases having merit for disposition within a reasonable time.

C. Control of Abuse Through Section 1915(d)
The elimination of the gross waste of time required to separate the "wheat from the unusual amount of chaff necessarily presented in a system which fosters pro se litigation," Watson v. Ault, 525 F.2d 886, 890 (5th Cir. 1976), is one of the most difficult challenges presently confronting the federal judiciary. Because Section 1915 is the ticket for free entrance into the federal system and is a privilege and not a right, Startti v. United States, 415 F.2d 1115, 1116 (5th Cir. 1969), this District, like many others, has focused on the discretionary controls contained in 28 U.S.C. § 1915(d) which enable a court to dismiss the action sua sponte "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." See Braden v. Estelle, 428 F.Supp. 595 (S.D.Tex.1977) (partial payment requirement established for certain Section 1915 filers); Hill v. Estelle, supra (second similar action dismissed as malicious). Thus, in defining the purpose of Section 1915(d), the First Circuit Court of Appeals in the oft-cited case of O'Connell v. Mason, 132 F. 245, 247 (1st Cir. 1904), stressed the responsibility of courts to ensure a reasonable, good faith use of the in forma pauperis statute:
"It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard members of the public against an abuse of the privilege by evil-minded persons who might avail themselves of the shield of immunity from costs for the purpose of harassing those with whom they were not in accord, by subjecting them to vexatious and frivolous legal proceedings."
To date, this Court has been unable on a case-by-case basis and without the benefit of plaintiff's overall litigation perimeters to monitor with any degree of effectiveness his use or misuse of the Section 1915 privilege. However, having recently compiled substantial documentation on plaintiff's case filings and conduct as a litigant through a review of state and federal court records, the Court now is in a position to address the questions presently before the Court and carry out its Section 1915(d) responsibilities. Accordingly, the order of discussion is as follows: chronology of this Court's previous monitoring of plaintiff's litigation in this District (Part II); plaintiff's misrepresentation of his financial status in order to proceed in forma pauperis and his prosecution of malicious and frivolous lawsuits through the use of abusive practices (Part III); and disposition of the motions before the Court and the promulgation of procedures necessary to prevent future abuse by this plaintiff of the Section 1915 privilege (Part IV).
In order to establish an appropriate record for review and ease of reference in this unique case, certified copies of certain documents, pleadings and orders hereafter discussed are included in a Supplemental File created and made a part of the record in this cause solely for purposes of this opinion.

II. CHRONOLOGY OF THIS COURT'S PREVIOUS MONITORING OF PLAINTIFF'S LITIGATION IN THE SOUTHERN DISTRICT OF TEXAS
In 1973, the Federal Judicial Center appointed a special committee chaired by Judge Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit to study the peculiar and difficult problems posed by the sudden dramatic increase of prisoner litigation in federal court. In a tentative report entitled "Recommended Procedures for Handling Prisoner Civil *951 Rights Cases in the Federal Courts" (October 6, 1975) (hereafter "Aldisert Report No. 1"), the Aldisert Committee promulgated a set of general guidelines premised on a need for centralization. One proposal for centralization had special relevance to plaintiff Carter:
"In multijudge courts it is a sound management practice . . . that all actions commenced by one prisoner be assigned to the same judge."
Aldisert Report No. 1, at 25. The report further encouraged district courts to create a Prisoner Staff Law Clerk position to oversee prisoner civil litigation.
In August, 1976, the Southern District established such a Staff Law Clerk position, hired a law school graduate to fill the slot and commenced implementation of the major recommendations of the Aldisert Tentative Report. See Braden v. Estelle, supra at 597, 600; Hill v. Estelle, supra at 694-95. In this regard, it was determined that the civil rights actions filed by the District's most litigious prisoner, plaintiff herein, would be transferred to the docket of this Court, and such a transfer was accomplished during the third quarter of 1976.
Two factors stemming from implementation of the Aldisert recommendations led this Court to the fortuitous discovery in late 1976 that plaintiff had obtained a $5,486.76 judgment against the United States in January of 1976, and therefore was no longer indigent. First, in order to make the in forma pauperis determination of 28 U.S.C. § 1915 more meaningful, the Staff Law Clerk with the approval of the Court devised and placed in use during October, 1976, a more detailed form affidavit of indigency to replace the generalized form in use at that time, blank copies of which were sent to plaintiff for completion. Second, following the transfer to this Court of plaintiff's pending civil rights actions, the Court undertook with the assistance of the Staff Law Clerk a review and study of plaintiff's prior filings in the Southern District of Texas, Houston Division, in order to grasp more fully the scope and nature of plaintiff's litigation. This review led to the discovery of the opinion by the United States Court of Claims in Carter v. United States, 509 F.2d 1150, 206 Ct.Cl. 61 (1975), modified, 518 F.2d 1199, cert. denied, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976), and its judgment in favor of plaintiff.
In view of the $5,486.76 judgment, this Court declared plaintiff no longer indigent in an Order of December 3, 1976, and directed him to reimburse the United States Government for prepaid filing and service fees in the 40 actions filed by him in the Houston Division which were pending at that time.
In the next three months, plaintiff collected the money judgment from the United States, voluntarily dismissed 23 of his actions, at least one of which he immediately refiled in another court, see Part III.B. 1.c., infra, but refused to pay filing and services fees totalling $354.00 in the remaining 17 actions. Accordingly, upon plaintiff's failure to comply with the further ruling of this Court of February 18, 1977, to pay the amounts previously ordered within ten days, plaintiff's actions were dismissed on March 7, 1977.
Plaintiff subsequently has filed motions inquiring whether the dismissals were with or without prejudice and asking that the dismissed actions now be reinstated in view of the fact that he has exhausted the $5,486.76 judgment in support of his wife and minor child. Plaintiff also recently sought leave to file a petition for writ of mandamus in the United States Supreme Court seeking a vacating of the March 7 Order and a declaration that plaintiff be permitted to prosecute these 17 actions in forma pauperis pursuant to 28 U.S.C. § 1915. The motion was denied by the Supreme Court on October 11, 1977. See 22 Crim.L.Rep. 4040 (No. 77-5349).

*952 III. PLAINTIFF'S DOCUMENTED ABUSE OF THE IN FORMA PAUPERIS PRIVILEGE
As stated previously, Carter has attempted to proceed as a pauper without prepayment of fees in almost every action commenced by him since 1961. Indeed, the earliest litigation commenced by plaintiff which this Court has been able to uncover, see List of Cases, Nos. 120, 144 thru 149, filed during April and May, 1961, were brought by plaintiff in forma pauperis, although up until December 30, 1960, a time four months prior to the filing of these actions as a pauper, plaintiff had been a Captain in the United States Air Force. See Carter v. United States, 509 F.2d 1150, 1152, 206 Ct.Cl. 61 (1975), modified, 518 F.2d 1199, cert. denied, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976).
In five of these actions, plaintiff was denied the right to proceed in forma pauperis by Federal Judge William A. Bootle, Middle District of Georgia, Macon Division, who, without reaching the question of plaintiff's alleged indigency, concluded that
"[t]he Court, in view of the number of these suits, their nature, their allegations and the showing made by some of the defendants in evidentiary fashion, in connection with motions for summary judgment, is not at all convinced that these suits are in good faith, and are not malicious, and brought to annoy."
Memorandum and Order, August 16, 1961, at 4; see Supplemental File, Exhibit B. Thus, the question of plaintiff's misuse of the Section 1915 privilege dates from the time of his earliest case filings.

A. Untrue Allegations of Poverty
In the early 1970's, the state courts of Harris County, Texas, were deluged with Carter complaints accompanied by affidavits of indigency. Numerous contests to plaintiff's financial indigency were lodged by the State District Clerk Ray Hardy and the County Clerk R. E. Turrentine, Jr., and prosecuted by the Harris County District Attorney's Office. After a court hearing in most cases, the majority of courts found that plaintiff was not indigent and denied pauper status, see, e. g., List of Cases, Nos. 15, 17, 63, 69, 71, 77, 83 and 159, while others granted plaintiff leave to proceed in forma pauperis. The denial of pauper status by certain state courts prompted other causes of action filed by plaintiff in forma pauperis, see, e. g., List of Cases, Nos. 50 and 51, including mandamus petitions filed by plaintiff in the Supreme Court of Texas which are not included in the List of Cases.
The next major denial of plaintiff's ability to proceed as a pauper based on his financial status was entered by this Court on December 3, 1976, as previously outlined in Part II., supra. The final judgment of the Court of Claims awarding plaintiff $5,486.76 was entered on January 2, 1976. However, plaintiff did not act to collect the money judgment, nor did he inform this Court of his changed pauper status in affidavits for leave to proceed in forma pauperis submitted in connection with causes of action filed after January 2, 1976. Instead, he continued to state under oath that he was indigent. Indeed, the December 3 Order recites the steps undertaken by this Court, once it had learned of the $5,486.76 judgment, to flush out plaintiff on this point and his continued reluctance to disclose this money recovery until directly questioned about it.
Records in the United States Court of Claims indicate that plaintiff was paid the judgment on December 6, 1976. Nevertheless, even following this Court's denial of plaintiff's pauper status in the December 3 Order and his collection of the judgment three days later, plaintiff has stated falsely under oath in applications to proceed in forma pauperis submitted after December 6, 1976, that he is indigent, without mention of the damage recovery and this Court's Order. Thus, in three actions received on December 21, 1976, and filed in the Galveston Division of the Southern District of Texas, on January 6, 1977, see List of Cases, Nos. 14, 107 and 138, plaintiff deceptively *953 submitted outdated affidavits completed November 26, 1976, asserting that he had received no funds in the past 12 months and that he was unable to pay the $15.00 filing fees and $3.00 service costs.
Additionally, on February 17, 1977, plaintiff filed a lawsuit in the Western District of Texas, Austin Division, see List of Cases, No. 39, and submitted an accompanying affidavit of indigency sworn to by him on December 27, 1976, in which he falsely swore on page 1 that he had not received any money from any source within the past 12 months. See Supplemental File, Exhibit C. Because of the routine lack of information by courts as to case filings in other districts, plaintiff obtained approval to proceed in forma pauperis in this recent cause of action.
As a consequence, plaintiff continues to deceive courts and falsely state under oath facts pertinent to his financial status in his attempt to invoke the in forma pauperis privilege of Section 1915 and obtain continued public financing of his private litigation.

B. Malicious and Frivolous Actions and Practices
Section 1915(d), in addition to permitting dismissal of an in forma pauperis action when the allegation of poverty is found to be untrue, further permits dismissal of a malicious or frivolous lawsuit. Courts, in exercising the discretion vested by this section, uniformly have taken judicial notice of official court records of other proceedings as an aid in determining whether a particular action should be so defined and dismissed. See, e. g., Daye v. Bounds, 509 F.2d 66, 68 (4th Cir.), cert. denied, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); Conway v. Oliver, 429 F.2d 1307, 1308 (9th Cir. 1970); Willard v. United States, 422 F.2d 810, 811 (5th Cir.), cert. denied, 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970). Because of the motions filed by plaintiff, this Court has undertaken to determine and document the scope and range of this plaintiffs' litigation in this and other forums, both state and federal, by gaining access to and reviewing pertinent court records. See Green v. Garrott, 71 F.R.D. 680 (W.D.Mo. 1976). The investigation, although extremely time-consuming, has proved to be highly revealing and has allowed this Court to obtain for the first time the necessary overview of plaintiff's approximately 15 years of active litigation, both prior to and during his periods of incarceration. On the basis of the information uncovered, the Court has compiled (1) a list of cases filed by plaintiff in forums which have come to the attention of this Court, and (2) a supplemental file containing certified copies of official court records from the files of other courts which are relied upon to illustrate certain of plaintiff's abusive tactical patterns of procedure as hereafter discussed.

1. The List of Cases Summarizing Plaintiff's Litigation Uncovered by this Court to Date

This Court has located 178 actions brought by plaintiff over the past 15 years, excluding administrative proceedings, numerous mandamus petitions directed at state and federal judges and other appellate filings. These cases are summarized and arranged in alphabetical order by defendant and, where appropriate, by subject matter.

Table to follow.

*954
 C A S E L I S T
 ALBERT H. CARTER V. CEPHUS D. BURSON (Employee of Texas Dept. of Corrections)
 ====================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
--------------------------------------------------------------------------------------------------------------------------------------------------------------
1. 6-4-75 75-G-78 S.D. Tex. Civil rights suit for 6-4-75: Dismissed for failure to
 Galv. Div. $15,000 damages for state a claim upon which relief
 slanderous statement can be granted;
 11-24-75: Leave to appeal in
 forma pauperis denied by Fifth
 Circuit
2. 9-29-75 75-G-132 S.D. Tex. Civil rights suit Pending;
 Galv. Div. seeking damages 8-16-77: Transferred to S.D. Tex.,
 for interception of Hou. Div.
 pltf.'s mail
 ALBERT H. CARTER V. CALHOUN COLD STORAGE CO.
 ============================================
3. 10-22-71 888,172 80th Dist. Court, To recover $10,503.20 4-27-72: Pltf.'s Motion for
 Harris County, for negligence in cold Summary Judgment denied;
 Tex. storage of candy & 5-7-75: Dismissed for want of
 candles by deft. in 1971 prosecution
4. 11-20-75 Carter v. Texas 75-H-1992 S.D. Tex. Diversity action to 12-3-76: Pauper status denied;
 Agribusiness Co., Hou. Div. recover $16,983.31 for 3-7-77: Dismissed for failure to
 successor in interest negligence in cold pay filing & service fees
 of Calhoun Cold storage of candy &
 Storage Co. candles by deft. in 1971

*955
 ALBERT H. CARTER V. CHIPPER'S NUT HUT, INC.
 ===========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
 5. 7-7-71 877,080 80th Dist. Court, To recover $7,850.00: Pltf. serves Tex. Secretary of
 Harris County, Salary = 5,500.00 State (long arm statute);
 Tex. Goods sold= 1,809.56 11-2-71: Default judgment
 Misc. = 540.44 granted for $7,850
 6. 9-24-71 71-H-1039 S.D. Tex. To recover $10,160 as 7-21-72: Notice of voluntary
 Hou. Div. compensation for dismissal
 services rendered &
 expenses
 7. 1-11-72 200,560 County Civil Court To recover $505.16 for Pltf. serves Tex. Secretary of State
 #2, Harris County, services rendered & (long arm statute);
 Tex. unpaid commissions 4-19-72: Default judgment granted
 for $505.16
 8. 8-1-72 56,541B 23rd Dist. Court, To recover $1,800 for Pltf. serves Tex. Secretary of State
 Brazoria County, goods sold (long arm statute);
 Tex. 11-8-76: Dismissed for lack of
 prosecution
 9. 8-4-72 915,948 190th Dist. Court, To recover $1,800 for 7-12-76: Dismissed for lack of
 Harris County, goods sold prosecution
 Tex.

*956
 ALBERT H. CARTER V. CHIPPER'S NUT HUT, INC.
 ===========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-------------------------------------------------------------------------------------------------------------------------------------------------------------
10. 10-6-74 74-H-1396 S.D. Tex. To enforce state court 10-16-74: Dismissed for lack of
 Hou. Div. judgment for $505.16 jurisdictional amount under 28
 (See Case List No. 7) USC 1332
11. 4-11-75 CV 75-1256 M.D. Calif. To enforce state court 4-29-75: Dismissed for lack of
 L.A. Div. judgment for $505.16 jurisdictional amount under 28
 (See Case List No. 7) USC 1332
12. 8-8-75 CV 75-2670 M.D. Calif. To recover $10,155.16 11-11-75: Dismissed for lack of
 L.A. Div. as compensation for prosecution
 services rendered &
 expenses
13. 1-8-76 CV 76-89-ALS M.D. Calif. To recover $10,155.16: 6-30-77: Dismissed, based on
 L.A. Div. 7,850.00 duplication of claims in attempt
 505.16 to meet $10,000 jurisdictional
 1,800.00 requirement of 28 USC 1332;
 9-9-77: Order entered dismissing
 appeal
14. 1-6-77 G-77-8 S.D. Tex. To recover $10,155.16: 3-29-77: Pltf. ordered to pay
 Galv. Div. 7,850.00 filing & service fees within 20
 505.16 days;
 1,800.00 4-12-77: Pltf.'s motion for
 clarification filed;
 10-26-77: Pltf.'s suggestion of
 involuntary dismissal for want of
 jurisdiction filed

*957
 ALBERT H. CARTER V. HORACE G. COOK (Professional bail bondsman)
 ==================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
--------------------------------------------------------------------------------------------------------------------------------------------------------------
15. 12-22-71 893,611 164th Dist. Court, Removal of cloud from 1-20-72: Pauper status denied;
 Harris County, property title & pltf. ordered to pay filing
 Tex. $11,585 damages fee;
 4-7-75: Dismissed for lack of
 prosecution
16. 5-10-73 73-H-605 S.D. Tex. Civil rights action 5-10-73: Dismissed for failure
 Hou. Div. challenging lien on to state a claim upon which relief
 pltf.'s property & can be granted;
 seeking $488 damages 10-1-74: Aff'd, 502 F.2d 1165 (5th
 Cir.), cert. denied, 419 U.S. 1093
 (1974)
17. 10-24-74 251,693 Harris County To remove lien on 11-22-74: Pauper status denied;
 Court of Law #3, pltf.'s property after pltf. ordered to pay filing fee;
 Harris County, Tex. bail bond forfeiture 6-7-75: Pltf. files nonsuit
 & seeking $3,488 damages
18. 6-9-75 1,029,500 215th Dist. Court, To remove lien on Pending
 Harris County, pltf.'s property after
 Tex. bail bond forfeiture &
 to recover $10,488
 damages
19. 5-25-76 76-H-863 S.D. Tex. Diversity action to 12-3-76: Pauper status denied;
 Hou. Div. recover $10,488 due to 2-28-77: Pltf.'s motion for
 lien on pltf.'s property voluntary dismissal without
 for bail bond forfeiture prejudice granted

*958
 ALBERT H. CARTER V. DIRECTOR, TEXAS DEPT. OF CORRECTIONS (Estelle/Beto)
 ========================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
20. 11-1-71 Carter v. George J. 71-H-1206 S.D. Tex. Petition for writ of 10-17-72: Dismissed for failure
 Beto Hou. Div. habeas corpus challenging to exhaust state remedies;
 validity of 1969 4-9-73: Aff'd, 474 F.2d 1344
 embezzlement conviction (5th Cir. 1973)
21. 8-16-72 Carter v. Beto 72-H-1109 S.D. Tex. Petition for writ of 12-3-76: Pauper status denied;
 Hou. Div. habeas corpus challenging 12-30-76: Notice of dismissal filed
 constitutionality
 of Art. 11.07, Texas
 Penal Code
22. 6-1-73 Carter v. W. J. 73-H-732 S.D. Tex. Petition for writ of 3-24-75: Voluntary dismissal without
 Estelle, Jr. Hou. Div. habeas corpus challenging prejudice granted pltf.
 validity of 1969 &
 1972 embezzlement convictions
 & enhancement
 sentence under habitual
 criminal statute
23. 12-3-74 Carter v. Estelle 74-H-1603 S.D. Tex. Petition for writ of Pending
 Hou. Div. habeas corpus challenging
 validity of 1972
 embezzlement conviction &
 enhancement sentence
 under habitual criminal
 statute

*959
 ALBERT H. CARTER V. DIRECTOR, TEXAS DEPT. OF CORRECTIONS (Estelle/Beto)
 ========================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pitfs./Defts. No. Court Nature of Action Disposition Summary
---------------------------------------------------------------------------------------------------------------------------------------------------------------
24. 2-19-75 Carter v. Billy G. 75-H-308 S.D. Tex. Petition for writ of 2-19-75: Dismissed for failure to
 McMillan & Estelle Hou. Div. habeas corpus challenging exhaust state remedies
 denial of good time
25. 1-7-76 Carter v. Estelle 76-H-19 S.D. Tex. Petition for writ of Pending
 Hou. Div. habeas corpus asserting
 denial of good time
26. 1-21-76 Carter v. Estelle, 76-H-130 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Oscar Savage & Hou. Div. alleging that defts. 12-30-76: Pltf.'s motion to dismiss
 Robert Beam prevented pltf. from without prejudice granted
 enrolling in college
 program at the TDC
27. 2-19-76 Carter, et al TY-76-73-CA E.D. Tex. Class petition for 8-6-76: Dismissed for failure to
 v. Estelle Tyler Div. writ of habeas corpus exhaust state remedies;
 alleging that life sentences 1-6-77: Aff'd, 544 F.2d 1245
 for certain (5th Cir. 1977)
 prisoners are unwarranted
 in view of type
 of crime committed

*960
 ALBERT H. CARTER V. DIRECTOR, TEXAS DEPT. OF CORRECTIONS (Estelle/Beto)
 ========================================================
CIVIL RIGHTS, ETC.
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
28. 8-3-72 Carter v. Beto 72-G-120 S.D. Tex. Civil rights class Pending;
 Galv. Div. action for monetary 3-30-77: Transferred to S.D. Tex.,
 & injunctive relief Hou. Div.
 requiring director to
 correct & amend pltf.'s
 records & to amend Point
 Incentive Program for all
 pltfs.
29. 2-20-75 Carter v. Estelle 75-H-314 S.D. Tex. Civil rights action to 2-28-75: Dismissed for failure to
 Hou. Div. recover $1,427.75 for state a claim upon which relief can
 personal property be granted;
 confiscated or lost 9-24-75: Reversed, 519 F.2d 1136
 (5th Cir. 1975);
 12-3-76: Pauper status denied;
 3-7-77: Dismissed for failure to
 pay filing & service fees
30. 7-1-75 Carter v. Wilbur 75-G-89 S.D. Tex. Civil rights suit for Pending
 Wallace & Estelle Galv. Div. being falsely accused 8-25-77: Transferred to S.D. Tex.,
 of misconduct & being Hou. Div.
 punished by solitary
 confinement on reduced
 rations
31. 8-13-75 Carter v. McMillan, 75-H-1402 S.D. Tex. Challenges assignment to 12-3-76: Pauper status denied;
 Estelle & Savage Hou. Div. field labor & refusal to 2-28-77: Voluntary dismissal without
 restore administrative prejudice granted
 job assignment in retaliation
 for civil rights
 suit

*961
 ALBERT H. CARTER V. DIRECTOR, TEXAS DEPT. OF CORRECTIONS (Estelle/Besto)
 ========================================================
CIVIL RIGHTS, ETC.
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
32. 9-4-75 Carter v. Estelle 75-H-1514 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Hou. Div. complaining of point 12-30-76: Voluntary dismissal without
 incentive program & prejudice granted
 seeking equitable relief
33. 9-29-75 Carter v. Savage, 75-H-1679 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Grady Stricklin, Hou. Div. alleging that defts. 3-7-77: Dismissed for failure to pay
 Sammy C. Lanham, physically assaulted & filing & service fees
 Cephus D. Burson, punished pltf. without
 W. S. Bouldin, Estelle, justification
 George Foster,
 Chester Jones,
 Rickey Bryant &
 Ray Rayfield
34. 1-14-76 Carter, et al v. TY-76-13-CA E.D. Tex. Civil rights class action 8-10-76: Transferred to S.D. Tex.,
 Estelle, Beto & (76-H-1342) Tyler Div. alleging that prisoners Hou. Div. as 76-H-1342;
 Savage (S.D. Tex., are unlawfully denied 12-3-76: Pltf.'s pauper status
 Hou. Div.) legal assistance from denied;
 other prisoners 3-7-77: Pltf. dismissed from suit for
 failure to pay filing & service fees
35. 4-27-76 Carter, Montgomery, 76-H-704 S.D. Tex. Civil rights class 12-3-76: Pauper status denied;
 et al v. Estelle Hou. Div. action alleging that 12-30-76: Voluntary dismissal without
 deft. employs an arbitrary prejudice granted
 & capricious method
 of assigning inmates to
 the various TDC units

*962
 ALBERT H. CARTER V. DIRECTOR, TEXAS DEPT. OF CORRECTIONS (Estelle/Beto)
 ========================================================
CIVIL RIGHTS, ETC.
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
------------------------------------------------------------------------------------------------------------------------------------------------------------------
36. 4-27-76 Carter, et al v. 76-H-705 S.D. Tex. Class action seeking 12-3-76: Pauper status denied;
 Estelle Hou. Div. injunctive relief & 12-30-76: Voluntary dismissal without
 damages because TDC cells prejudice granted
 are too small resulting
 in cruel & unusual
 punishment
37. 5-14-76 Carter v. Estelle 76-H-814 S.D. Tex. Civil rights action contending 12-3-76: Pauper status denied;
 Hou. Div. that erroneous 12-30-76: Dismissed for failure to pay
 information as to pltf.'s filing & service fees
 personal background is
 recorded in prison records,
 which is prejudicial to him
 with regard to his status
 as a prisoner
38. 6-2-76 Carter & William M. 76-H-908 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Houser v. Estelle Hou. Div. attacking certain TDC 12-30-76: Dismissed for failure to pay
 rules & regulations as filing & service fees
 invalid
39. 2-17-77 Carter v. Estelle, A-77-CA-31 W.D. Tex. Action filed in forma Pending
 Paul Cromwell, Austin Div. pauperis to declare certain
 Chrmn., Tex. Bd. criminal convictions
 of Pardons & Paroles invalid & to expunge these
 & Wilson Spier, convictions & other
 Director, Tex. Dept. derogatory information from
 of Public Safety the official state records
 of the State of Texas

*963
 ALBERT H. CARTER V. HARRIS COUNTY, TEXAS, SHERIFF (C.V. Kern & Jack Heard)
 =================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
40. 4-24-71 Carter v. Kern 71-H-461 S.D. Tex. Petition for writ of 6-18-71: Dismissed for failure to
 Hou. Div. habeas corpus challenging exhaust state remedies
 validity of 1969
 embezzlement conviction
41. 11-6-73 Carter v. Kern 73-H-1520 S.D. Tex. Petition for writ of 11-6-73: Dismissed for failure to
 Hou. Div. habeas corpus challenging exhaust state remedies
 validity of 1972
 embezzlement conviction
 & enhancement of sentence
CIVIL RIGHTS
42. 3-18-72 Carter v. Kern 72-H-344 S.D. Tex. Civil rights action for 12-3-76: Pauper status denied;
 Hou. Div. loss of watch & money due 3-7-77: Dismissed for failure to pay
 to inadequate supervision filing & service fees
 ($825)
43. 1-1-74 Carter v. Heard 74-H-42 S.D. Tex. Civil rights action for 12-3-76: Pauper status denied;
 Hou. Div. loss of clothing & law 3-7-77: Dismissed for failure to
 books due to inadequate pay filing & service fees
 supervision ($502)
44. 9-12-74 Carter v. Heard & 74-H-1260 S.D. Tex. Civil rights action for 12-3-76: Pauper status denied;
 Clarence W. Rust Hou. Div. conspiracy to deny pltf. 1-31-77: Voluntary dismissal without
 jail privileges prejudice granted
 ($100,000)

*964
 ALBERT H. CARTER V. HARRIS COUNTY, TEXAS, SHERIFF (C.V. Kern & Jack Heard)
 =================================================
CIVIL RIGHTS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
45. 3-18-75 Carter v. Heard, 75-H-438 S.D. Tex. Civil rights action for 12-3-76: Pauper status denied;
 Rust & Robert Hou. Div. loss of books & papers 1-31-77: Voluntary dismissal without
 Brackenridge due to inadequate supervision prejudice granted
 ($3,440.50)
46. 6-16-76 Carter v. Heard 76-H-983 S.D. Tex. Civil rights action to 6-16-76: Dismissed for failure to
 Hou. Div. enjoin execution on $300 state a claim upon which relief can
 default judgment obtained be granted
 against pltf. in state
 court
47. 6-16-76 Carter v. Heard 76-H-985 S.D. Tex. Civil rights action to 7-23-76: Dismissed for failure to
 Hou. Div. enjoin execution on state a claim upon which relief can
 $569.75 default judgment be granted
 obtained against pltf. in
 state court
 ALBERT H. CARTER V. RAY HARDY, DISTRICT COURT CLERK, HARRIS COUNTY, TEXAS
 =========================================================================
HABEAS CORPUS
48. 3-20-75 75-H-447 S.D. Tex. Habeas corpus action 1-29-76: Pltf.'s notice of dismissal
 Hou. Div. challenging validity of filed
 three misdemeanor convictions
 for passing of
 worthless checks & the
 guilty pleas entered therein

*965
 ALBERT H. CARTER V. RAY HARDY, DISTRICT COURT CLERK, HARRIS COUNTY, TEXAS
 =========================================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
------------------------------------------------------------------------------------------------------------------------------------------------------------------
49. 6-25-75 75-H-1111 S.D. Tex. Habeas corpus action 12-23-75: Motion to convert to civil
 Hou. Div. challenging validity of rights action to expunge records of
 3 misdemeanor convictions conviction;
 for passing of worthless 3-18-76: Dismissed in light of Fifth
 checks & the guilty pleas Circuit opinion in Carter v. Hardy,
 entered therein 526 F.2d 314 (5th Cir. 1976) (Case
 List No. 54);
 4-5-77: Aff'd (unpublished slip
 op. no. 76-3376)
CIVIL RIGHTS
50. 2-8-72 72-H-90 S.D. Tex. Civil rights action 2-16-72: Dismissed for failure to
 Hou. Div. alleging that because state a claim upon which relief can be
 deft. contested pltf.'s granted;
 pauper status in several 8-28-72: A'ffd (unpublished slip
 suits & was sustained, op. no. 72-2098)
 pltf. was deprived of
 access to court & deprived
 of $298,419.60
51. 8-1-73 73-H-1073 S.D. Tex. Civil rights action 10-30-73: Deft.'s motion for summary
 Hou. Div. alleging that deft. judgment granted
 successfully contested
 pltf.'s pauper status
 but did not dismiss
 cases as was the custom
52. 8-9-73 73-H-1121 S.D. Tex. Civil rights action 8-9-73: Dismissed on grounds that
 Hou. Div. (construed as mandamus federal court has no mandamus power
 petition) to require over state courts or officials;
 clerk to supply transcript 8-1-74: Aff'd (unpublished slip
 of criminal op. no. 74-2212)
 proceeding to indigent
 pltf.

*966
 ALBERT H. CARTER V. RAY HARDY, DISTRICT COURT CLERK, HARRIS COUNTY, TEXAS
 =========================================================================
CIVIL RIGHTS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
53. 4-19-74 74-H-538 S.D. Tex. Civil rights action to 9-27-74: Dismissed for failure to
 Hou. Div. declare Art. 567b of exhaust state remedies;
 the Texas Penal Code 12-6-76: Fifth Circuit affirms
 unconstitutional & dismissal, 543 F.2d 555 (5th Cir.
 ordering deft. to 1976), on the basis of its opinion
 expunge pltf.'s bad check in Carter v. Hardy, 526 F.2d 314
 convictions under this (5th Cir. 1976) (Case List No. 54)
 statute in 1963 & 1965
 from his record
54. 6-27-75 75-H-1136 S.D. Tex. Civil rights action 6-27-75: Dismissed on grounds that
 Hou. Div. (construed as a mandamus federal court has no mandamus power
 petition) to require over state courts or officials;
 clerk to expunge pltf.'s 1-23-76: Aff'd on other grounds, 526
 bad-check convictions F.2d 314 (5th Cir. 1976)
 in 1963 & 1965 from his
 record
55. 3-19-76 76-H-458 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Hou. Div. alleging that deft. caused 3-7-77: Dismissed for failure to pay
 3 actions to be dismissed filing & service fees
 for lack of prosecution
 without notice
56. 6-23-76 76-H-1044 S.D. Tex. Action seeking 12-3-76: Pauper status denied;
 Hou. Div. equitable relief to 3-7-77: Dismissed for failure to pay
 set aside court order filing & service fees
 overturning prior judgment
 for pltf. in Carter
 v. Telectron, No. 935,762,
 80th Judicial Dist. Court,
 Harris County, Tex.,
 (Case List No. 102)

*967
 ALBERT H. CARTER V. JOHN HILL, TEXAS ATTORNEY GENERAL
 =====================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
57. 12-29-72 Carter, et al v. Hill 72-H-1709 S.D. Tex. Class action for declaratory 12-29-72: Dismissed for failure to
 Hou. Div. relief challenging state a cause of action under the
 validity of Art. 1176a, civil rights act;
 Texas Penal Code 6-20-73: Aff'd, 480 F.2d 922 (5th
 Cir. 1973)
58. 7-5-73 73-H-936 S.D. Tex. Class action for declaratory 9-10-73: Dismissed without prejudice
 Hou. Div. relief challenging so that it may be re-filed as habeas
 constitutionality of Art. corpus action;
 63, Texas Penal Code 7-24-74: Appeal dismissed
59. 6-27-75 Carter v. Hill, 75-H-1134 S.D. Tex. Civil rights action 12-3-76: Pauper status denied;
 Larry F. York, Hou. Div. alleging that defts. misrepresented 12-30-76: Pltf.'s notice of dismissal
 Joe B. Dibrell, facts to the filed
 Lonny F. Zweiner, court in connection with
 Harrell Moore, their answers filed in 3
 Estelle, Dan V. causes of action brought
 McKaskle, John L. by pltf. & that defts.
 McClintic, Paul I. retaliated for pltf.'s
 Biscoe & Wm. Maggard access to court
60. 6-27-75 Carter v. Hill, 75-H-1140 S.D. Tex. (Same as Case List 11-14-75: Consolidated w/75-H-1134,
 et al (Same as defts. Hou. Div. No. 59) Case List No. 59;
 in Case List No. 59) 12-3-76: Pauper status denied;
 12-30-76: Pltf.'s notice of dismissal
 filed

*968
 ALBERT H. CARTER V. GEORGE LARKIN, CONSTABLE, PRECINCT NO. 2, HARRIS COUNTY, TEXAS
 ==================================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-------------------------------------------------------------------------------------------------------------------------------------------------------------------
61. 10-3-69 69-H-960 S.D. Tex. Challenges constitutionality 3-26-70: Judgment entered on behalf
 Hou. Div. of state statutes of defts. on grounds that pltf. has
 governing sequestration adequate remedy at law in state courts
 in connection with seizure
 of air conditioner (see
 "Masco Mechanical Contractors"
 actions, Case List
 Nos. 63-67)
62. 11-12-73 73-H-1546 S.D. Tex. Civil rights action 2-8-74: Dismissed on grounds of res
 Hou. Div. challenging seizure of judicata (identical to Case List No. 61
 air conditioner ($10,532)
 ALBERT H. CARTER V. MASCO MECHANICAL CONTRACTORS
 ================================================
63. 12-22-71 893,617 61st Dist. Court, Deft. removed air conditioner 1-20-72: Pauper status denied;
 Harris County, Tex. from house, 4-23-73: Pltf. filed nonsuit
 injured property & made
 house unlivable for 6
 days ($1,058.50)
64. 1-14-72 200,756 Harris County Court Bill of Review of 10-4-72: Bill of Review denied & case
 of Law #2 $569.75 judgment dismissed; pltf. ordered to pay costs
 entered on 10-27-71 in 4-6-73: Aff'd by Tex. Court of Civil
 favor of deft. in Masco Appeals
 Mechanical Contractors v.
 Carter, No. 173,650,
 Harris County Court of
 Law No. 2

*969
 ALBERT H. CARTER V. MASCO MECHANICAL CONTRACTORS
 ================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
65. 3-6-72 55,798D 130th Dist. Court, To recover $1,058.50 for Pltf. serves Texas Secretary of State
 Brazoria County, damages in connection (long arm statute);
 Tex. with removal of air 10-26-72: Default judgment for
 conditioner, $569.75 to $1,628.25 granted
 counterbalance default
 judgment granted deft. &
 $10,000 punitive damages
66. 3-18-72 Carter v. R.E. 72-H-345 S.D. Tex. Civil rights action seeking 12-3-76: Pauper status denied;
 Turrentine Hou. Div. injunction & declaratory 2-28-77: Pltf.'s motion to dismiss
 judgment that granted
 judgment rendered against
 pltf. in Masco Mechanical
 Contractors v. Carter, No.
 173,650, Harris County Court
 at Law No. 2, is null & void
67. 5-28-75 75-H-833 S.D. Tex. Seeking declaratory relief 5-28-75: Dismissed;
 Hou. Div. to invalidate 10-27-71 5-4-76: Aff'd (unpublished slip op.
 judgment for $569.75 no. 75-4382)
 entered in favor of deft.
 in Masco Mechanical
 Contractors v. Carter, No.
 173,650, Harris County
 Court of Law No. 2
 ALBERT H. CARTER V. THE MONEY TREE CO.
 ======================================
68. 8-30-71 71-H-943 S.D. Tex. To collect $10,551 for 5-12-73: Dismissed for lack of
 Hou. Div. unpaid salaries & jurisdiction over deft.--use of
 expenses long arm service on the deft.
 declared inadequate
69. 12-22-71 893,613 189th Dist. Court, To recover $16,300 for 1-10-72: Pauper status denied;
 Harris County, Tex. unpaid salaries & 3-12-73: Voluntary dismissal granted
 expenses pltf.

*970
 ALBERT H. CARTER V. THE MONEY TREE CO.
 ======================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
70. 2-14-72 55,692D 130th Dist. Court To recover $16,300 for Pltf. serves Texas Secretary of State
 Brazoria County, Tex. unpaid salaries & (long arm statute);
 expenses 10-16-72: Default judgment granted;
 6-18-73: Judgment set aside for lack
 of personal jurisdiction over deft.
 (see Supplemental File, Exhibit N);
 1-9-74: Aff'd, 504 S.W. 783 (Tex.
 Civ. App.Houston [14th Dist.]),
 cert. denied, 419 U.S. 865 (1974)
71. 9-13-72 919,809 190th Dist. Court, To recover $16,300 for 10-31-72: Pauper status denied
 Harris County, Tex. unpaid salaries & 4-24-73: Pltf. files nonsuit
 expenses, $10,000
 for libel & slander &
 $25,000 punitive damages
72. 11-28-72 72-G-218 S.D. Tex. To recover $16,300 1-28-74: Dismissed in light of
 Galv. Div. judgment awarded by the fact that default judgment
 130th Dist. Court of sued upon subsequently set aside
 Brazoria County on by 130th Dist. Court in Case List
 10-16-72 in Case List No. 70 and that claim is frivolous;
 No. 70 9-25-74: Aff'd, 502 F.2d 783 (5th
 Cir. 1974), cert. denied, 419 U.S.
 1115 (1975)
73. 10-16-74 Carter v. Francis 74-G-184 S.D. Tex. To order deft. to set 10-16-74: Dismissed on grounds
 Bennett, Dist. Clerk, Galv. Div. aside an order & judgment that federal courts have no
 Brazoria County, Tex. entered by the 130th general authority to order the
 Dist. Court, Harris relief sought;
 County, Tex., in Case 2-10-75: Fifth Circuit denies
 List No. 70 leave to appeal in forma pauperis
74. 1-22-75 4-75 Civ. 33 D. Minn. To recover for denial of 7-30-75: Dismissed on grounds of
 due process of law in res judicata in light of disposition
 setting aside of default in Case List No. 72;
 judgment in Case List 3-24-76: Aff'd, 532 F.2d 113 (8th
 No. 70 Cir.), cert. denied, 426 U.S. 925
 (1976)

*971
 ALBERT H. CARTER V. JOE MOSS, ASSISTANT DISTRICT ATTORNEY
 =========================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
75. 5-28-75 75-H-834 S.D. Tex. Civil rights action to 5-28-75: Dismissed for failure
 Hou. Div. recover $250,000 for to state a claim upon which
 slanderous statements relief may be granted;
 4-22-76: Aff'd, 531 F.2d 573 (5th
 Cir. 1976)
76. 6-23-76 76-H-1036 S.D. Tex. Diversity action to Pending
 Hou. Div. recover $250,000 for
 slanderous statements
 ALBERT H. CARTER V. ANTHONY PARKER, OWNER, PARKER'S SERVICE STATION
 ===================================================================
77. 1-27-64 635,849 151st Dist. Court, Action for false arrest 2-3-64: Pauper status denied
 Harris County, Tex. & malicious prosecution 6-15-65: Dismissed for want of
 prosecution
78. 1-29-65 663,585 127th Dist. Court Action for false arrest 6-8-65: Pltf.'s motion for dismissal
 Harris County, Tex. & malicious prosecution with prejudice granted
 ALBERT H. CARTER V. RAY RACCA (Potential purchaser in 1972 of realty owned by pltf.)
 =============================
79. 11-14-72 215,325 Harris County Court Action alleging that deft. 12-8-72: Nonsuit for pltf. granted
 of Law No. 1 wrongfully stopped payment
 on $25 check
80. 12-29-72 929,501 125th Dist. Court, Action to recover 6-4-74: Pauper status denied;
 Harris County, Tex. $15,000 for annoyance 7-1-75: Pauper status granted;
 from bill collection 4-5-77: Dismissed for want of
 methods prosecution

*972
 ALBERT H. CARTER V. SAM ROBERTSON, ASSISTANT DISTRICT ATTORNEY, HARRIS COUNTY, TEXAS
 ====================================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
---------------------------------------------------------------------------------------------------------------------------------------------------------------
81. 10-22-74 74-H-1424 S.D. Tex. Civil rights action 10-22-74: Dismissed for failure to
 Hou. Div. alleging that deft. state a claim upon which relief can
 deprived him of a fair be granted;
 trial by the making of a 2-5-75: Fifth Circuit denies leave
 false statement to the to appeal in forma pauperis
 jury ($300,000)
82. 6-23-76 76-H-1038 S.D. Tex. Diversity action to 12-3-76: Pauper status denied;
 Hou. Div. recover $500,000 for 12-30-76: Pltf.'s motion for
 making of libelous & dismissal without prejudice granted
 slanderous statements
 ALBERT H. CARTER V. SAVIN BUSINESS MACHINE CO.
 & LARRY BROWN, REGIONAL MANAGER OF SAVIN BUSINESS MACHINE CO.
 =============================================================
83. 1-24-64 Carter v. Savin 635,728 151st Dist. Court, To recover $60,300 for 2-3-64: Pauper status denied;
 Business Machine Harris County, Tex. false arrest & malicious 6-15-65: Dismissed for lack of
 Co. & Larry Brown prosecution prosecution
84. 11-18-64 Carter v. Savin 131,041 Harris County Court Suit to foreclose 1-31-66: Summary judgment for $400
 Business Machine of Law #1 laborers lien based on granted pltf.
 Co., Larry Brown services
 & Billy Brown rendered & unpaid
85. 1-29-65 Carter v. Savin 663,573 157th Dist. Court, Suit to recover 5-17-65: Pltf.'s motion to dismiss
 Business Machine Harris County, Tex. for false arrest & with prejudice granted
 Co. & Larry Brown malicious prosecution
86. 11-19-65 Carter v. Savin 138,672 Harris County Court To recover unemployment 4-11-66: Dismissed for lack of
 Business Machine of Law #1 commissions wrongfully jurisdiction
 Co., Tex. Employment denied
 Comm. & Neptune Meter
 Co.

*973
 ALBERT H. CARTER V. SAVIN BUSINESS MACHINE CO.
 & LARRY BROWN, REGIONAL MANAGER OF SAVIN BUSINESS MACHINE CO.
 =============================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
---------------------------------------------------------------------------------------------------------------------------------------------------------------
87. 2-4-66 Carter v. Savin 693,560 157th Dist. Court, Bill of review alleging 5-6-68: Dismissed for lack of
 Business Machine Harris County, Tex. that pltf.'s motion for prosecution
 Co. & Larry Brown dismissal in Case List
 No. 85 was filed under
 duress
88. 3-28-66 Carter v. Savin 134,577 Harris County Court Suit to foreclose 1-13-66: Consolidated with Case
 Business Machine of Law #1 laborer's lien based List No. 84
 Co. on services rendered
 and unpaid
 ALBERT H. CARTER V. SIMONIZ CO.
 ===============================
89. 4-28-67 732,072 125th Dist. Court, Suit to recover $1,459.77 8-21-69: Joint motion for dismissal
 Harris County, Tex. for unpaid salary & granted (settlement)
 expenses
90. 5-16-68 161,865 Harris County Court Suit to recover $890 for 8-21-69: Joint motion for dismissal
 of Law #1 unpaid salary & expenses granted (settlement)
 ALBERT H. CARTER V. STATE DISTRICT JUDGES, HARRIS COUNTY, TEXAS
 ===============================================================
91. 9-20-71 Carter v. E.B. Duggan 71-H-1005 S.D. Tex. Action seeking damages 10-5-71: Dismissed for failure to
 & Wm. Hatten Hou. Div. & injunctive relief utilize & exhaust state remedies;
 against two state district 4-28-72: Aff'd, 455 F.2d 1156 (5th
 judges for their Cir. 1972)
 actions in certain state
 criminal prosecutions of
 pltf.

*974
 ALBERT H. CARTER V. STATE DISTRICT JUDGES, HARRIS COUNTY, TEXAS
 ===============================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
---------------------------------------------------------------------------------------------------------------------------------------------------------------
92. 12-26-74 Carter, et al v. 74-H-1686 S.D. Tex. Civil rights action 12-26-74: Dismissed for failure to
 Garth Bates, et al Hou. Div. challenging refusal of state a claim upon which relief can
 (all State district state district courts to be granted;
 judges of Harris grant hearing on post-conviction 5-21-75: Fifth Circuit denies leave
 County, Tex.) habeas to appeal in forma pauperis
 corpus applications
93. 1-17-75 Carter v. George 75-H-105 S.D. Tex. Civil rights action 1-17-75: Dismissed for failure to
 Walker & James Neff Hou. Div. challenging state state a claim upon which relief can
 criminal convictions of be granted
 pltf. notwithstanding
 pltf.'s petition for
 removal to federal court
 (Case List No. 179)
94. 2-19-76 Carter v. George B-76-73-CA E.D. Tex. Civil rights action 8-20-76: Dismissed;
 Walker & James Neff Beaumont Div. challenging state criminal 1-5-77: Fifth Circuit denies leave
 conviction of pltf. notwithstanding to appeal in forma pauperis
 pltf.'s
 petition for removal to
 federal court (Case List
 No. 178)
95. 4-27-76 Carter &. Wm. M. 76-H-706 S.D. Tex. Civil rights action 5-24-76: Dismissed for failure to
 Houser v.George Hou. Div. challenging refusal of state a claim upon which relief
 Walker, et al (all state district courts to can be granted;
 State district judges grant hearings on post-conviction 1-12-77: Aff'd (unpublished slip
 of Harris County, Tex.) habeas op. no. 76-2773)
 corpus applications
 ALBERT H. CARTER V. TELECTRON, INC., & CERTAIN OFFICERS & EMPLOYEES
 ===================================================================
96. 8-30-71 Carter v. Telectron 71-H-944 S.D. Tex. To recover $45,307.74 for 12-3-76: Pauper status denied;
 Hou. Div. wages, expenses & goods 3-7-77: Dismissed for failure to
 sold pay filing & service fees

*975
 ALBERT H. CARTER V. TELECTRON, INC., & CERTAIN OFFICERS & EMPLOYEES
 ===================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
 97. 2-14-72 Carter v. Telectron 55,693A 149th Dist. Court, To recover $48,116.75 for 10-23-75: Nonsuit granted pltf.
 Brazoria County, Tex. wages, expenses & goods
 sold
 98. 6-7-72 Carter v. Telectron 910,105 190th Dist. Court, To recover $110,000 for 7-12-76: Dismissed for want of
 Harris County, Tex. false testimony by deft.'s prosecution
 employees & $48,116.35 for
 unpaid wages & expenses
 99. 6-13-72 Carter v. Telectron 56,298A 149th Dist. Court, To recover $110,000 for 5-5-75: Nonsuit granted pltf.
 Brazoria County, Tex. false testimony by deft.'s
 employees
100. 11-2-72 Carter v. Telectron, 72-H-1480 S.D. Tex. To recover $10,000,000 11-2-72: Dismissed for failure to
 Andrew Dolce, Richard Hou. Div. for conspiracy to wrongfully state a claim upon which relief can
 Sandstrom & Frederick convict pltf. be granted;
 Wagner 7-6-73: Aff'd, 480 F.2d 922 (5th
 Cir. 1973)
101. 2-15-73 Carter v. Telectron 57,469B 23rd Dist. Court, To recover $24,485.87 for 5-21-73: Nonsuit granted pltf.
 Brazoria County, Tex. goods sold
102. 3-5-73 Carter v. Telectron 935,762 80th Dist. Court, To recover $22,475.87 1-6-75: Default judgment for pltf.
 Harris County, Tex. for goods sold set aside on deft.'s motion;
 3-4-77: Pltf. ordered to show cause
 why case should not be dismissed for
 want of prosecution;
 3-22-77: Pltf. files response to
 show cause order

*976
 ALBERT H. CARTER V. TELECTRON, INC., & CERTAIN OFFICERS & EMPLOYEES
 ===================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
103. 8-15-74 Carter, individually 74-G-136 S.D. Tex. To recover damages of 8-16-74: Dismissed for failure to
 & as guardian of 6 Galv. Div. $8,302,000 for conspiracy state a claim upon which relief can
 minor children v. to wrongfully convict be granted
 Telectron, Dolce, pltf.
 Sandstrom & Wagner
104. 4-22-75 Carter, et al (his 6 SA 75-CA-96 W.D. Tex. To recover damages of 9-17-75: Dismissed;
 children) v. Telectron San Antonio Div. $8,342,000 for conspiracy 5-21-76: Aff'd, 532 F.2d 1373 (5th
 Dolce, Sandstrom & to wrongfully convict pltf. Cir. 1976)
 Wagner
105. 4-28-75 Carter v. Telectron SA 75-CA-102 W.D. Tex. Civil rights action 9-17-75: Dismissed for failure to
 San Antonio Div. alleging that deft. unlawfully state a claim upon which relief can
 deprived him of his be granted;
 property in acting to set 7-1-77: Fifth Circuit orders that
 aside default judgment in dismissal be without prejudice:
 Case List No. 102 554 F.2d 1369 (5th Cir. 1977)
106. 10-28-76 Carter, individually 76-H-1780 S.D. Tex. To recover damages of 12-3-76: Pauper status denied;
 & in behalf of Nancy Hou. Div. $6,600,000 for conspiracy 12-22-76: Notice of dismissal filed
 Carter v. Telectron, to wrongfully convict by pltf.
 Dolce, Sandstrom & pltf.
 Wagner
107. 1-6-77 Carter, individually G-77-9 S.D. Tex. To recover damages of 3-29-77: Pltf. ordered to pay filing
 & in behalf of Nancy Galv. Div. $7,000,000 for conspiracy & service fees within 20 days;
 Carter v. Telectron, to wrongfully convict 4-12-77: Pltf.'s motion for
 Dolce, Sandstrom & pltf. clarification filed
 Wagner

*977
 ALBERT H. CARTER V. TELECTRON, INC., & CERTAIN OFFICERS & EMPLOYEES
 ===================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
------------------------------------------------------------------------------------------------------------------------------------------------------------------
108. 1-6-75 Carter & Richard 75-H-21 S.D. Tex. Mandamus to compel deft. 1-6-75: Dismissed for failure to
 Chapman v. Thomas Hou. Div. to file without delay state a claim upon which relief
 all in forma pauperis can be granted;
 petitions 3-5-76: Reversed, 527 F.2d 1332
 (5th Cir. 1976);
 12-3-76: Pltf.'s pauper status
 denied;
 3-3-77: Pltf. dismissed from suit
 for failure to pay filing & service
 fees
109. 6-20-75 75-H-1072 S.D. Tex. Mandamus to convene 3-judge 6-20-75: Dismissed as frivolous
 Hou. Div. court to determine
 constitutionality of
 $10,000 amount in controversy
 requirement for federal
 diversity jurisdiction
110. 8-31-76 Carter, et al v. 76-H-1446 S.D. Tex. Mandamus class action 12-3-76: Pltf.'s pauper status denied;
 Thomas Hou. Div. challenging multiple federal 3-7-77: Pltf. dismissed from suit for
 court procedures failure to pay filing & service fees
111. 9-21-76 76-H-1550 S.D. Tex. Contends that deft. fails 12-3-76: Pauper status denied;
 Hou. Div. to enter default judgments 3-7-77: Dismissed for failure to pay
 without a court order filing & service fees
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
HABEAS CORPUS
112. 4-26-61 Carter v. USA 1754 M.D. Ga. Petition for writ of 5-1-61: Petition denied
 Macon Div. habeas corpus challenging
 pretrial confinement by
 United States

*978
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
113. 11-5-64 Carter v. USA 831 M.D. Ga. Motion to vacate judgment 11-5-64: Motion dismissed; pltf.
 Albany Div. of conviction for denied leave to appeal in forma
 perjury in 1962 in pauperis
 Crim. No. 2158
114. 12-29-64 Carter v. USA 558 M.D. Ga. Motion to vacate judgment 12-29-64: Motion dismissed; pltf.
 Americus Div. of conviction in denied leave to appeal in forma
 1961 in Crim. No. 1417 pauperis
 for unlawfully wearing
 a military uniform
115. 7-1-69 Carter v. USA Crim. No. M.D. Ga. Motion to vacate judgment 11-20-69: Motion dismissed, 319
 2158 Albany Div. of conviction for F. Supp. 702;
 perjury in 1962 in 1-14-71: Aff'd, 437 F.2d 444 (5th
 Crim. No. 2158 Cir. 1971), cert. denied, 403 U.S.
 920 (1972)
116. 9-19-74 Carter v. Saxbe 74-H-1286 S.D. Tex. Action to set aside 1962 9-19-74: Dismissed for lack of
 Hou. Div. federal perjury conviction, jurisdiction (proper court is court
 18 USC 3758 of convictionM.D. Ga.);
 12-11-74: Leave to appeal in forma
 pauperis is denied by 5th Cir.
117. 9-30-75 Carter v. USA, 75-H-1689 S.D. Tex. Action to expunge all 9-30-75: Transferred to M.D. Ga.,
 Edward Levi & (75-0049) Hou. Div. records of pltf.'s 1962 Albany Div. as C.A. 75-0049;
 Walter F. Doyle (M.D. Ga., Albany perjury conviction 1-13-76: Deft.'s motion to dismiss
 Div.) with prejudice filed;
 1-19-76: Pltf.'s notice of dismissal
 without prejudice filed;
 2-20-76: Deft.'s motion to dismiss
 with prejudice granted;
 2-16-77: Remanded to enter dismissal
 without prejudice pursuant to pltf.'s
 notice of dismissal, 547 F.2d 258
 (5th Cir. 1977)

*979
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
HABEAS CORPUS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
118. 3-18-76 Carter v. USA Crim. No. M.D. Ga. Motion to vacate 3-18-76: Dismissed;
 1417 Americus Div. judgment of conviction 8-6-76: Aff'd per curiam (unpublished
 in 1961 in Crim. No. slip opinion)
 1417 for unlawfully
 wearing a military uniform
119. 11-30-77 Carter v. USA H-77-1967 S.D. Tex. Habeas corpus action to Pending
 Hou. Div. set aside conviction in
 1961 in Crim. No. 1417
 for unlawfully wearing a
 military uniform
DISCHARGE FROM UNITED STATES AIR FORCE
120. 5-1-61 Carter v. Thomas 1755 M.D. Ga. Charges unlawful & 8-16-61: Pltf. denied right to
 White & 20 other Macon Div. arbitrary discharge proceed in forma pauperis (see
 named individuals from U.S. Air Force Supplemental File, Exhibit B);
 9-18-61: Dismissed for failure to
 pay the costs of filing
121. 5-17-62 Carter v. USA 14,344 S.D. Tex. Seeks access to military 7-20-62: Dismissed for want of
 Hou. Div. records bearing on prosecution
 involuntary discharge
122. 9-9-63 Carter v. Eugene 63-G-63 S.D. Tex. Action for damages 1-22-64: Transferred to Hou. Div.
 Zuckert (64-H-30) Galv. Div. relating to discharge as 64-H-30;
 from Air Force & seeks 12-23-68: Dismissed for lack of
 reinstatement as Captain jurisdiction in light of identical
 action in the Court of Claims (Case
 List No. 123);
 5-8-69: Aff'd, 411 F.2d 767 (5th Cir.
 1969), cert. denied, 397 U.S. 941
 (1970)

*980
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
DISCHARGE FROM UNITED STATES AIR FORCE
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
123. 4-19-66 Carter v. USA 127-66 U.S. Court of Claims Challenges validity of 1-22-75: Judgment for pltf. entered
 proceedings resulting in 509 F.2d 1150 (1975), modified, 518
 discharge from Air Force F.2d 1199, cert. denied, 423 U.S.
 & seeks damages 1076 (1976);
 1-2-76: Trial division awards pltf.
 $5,486.76 as damages;
 12-6-76: Pltf. paid $5,486.76 by
 Treasury check
124. 1-6-69 Carter v. USA 69-G-5 S.D. Tex. Action for damages 3-3-69: Dismissed on grounds of
 Galv. Div. relating to discharge statute of limitations & collateral
 from Air Force estoppel in light of 63-G-63
 (Case List No. 122)
125. 8-12-75 Carter v. USA 75-H-1392 S.D. Tex. Claim for educational 12-3-76: Pauper status denied;
 Hou. Div. benefits due to change 12-30-76: Pltf.'s motion for
 in military discharge voluntary dismissal granted
 status
126. 2-4-76 Carter v. Thomas TY 76-56-CA E.D. Tex. Challenges validity of 4-28-76: Dismissed on grounds of
 Reed & USA Tyler Div. proceedings resulting in improper venue
 general discharge from
 military & seeks damages
127. 2-4-76 Carter v. USA TY 76-57-CA E.D. Tex. To recover damages for 5-5-76: Dismissed on grounds of
 Tyler Div. allowances denied pending improper venue
 involuntary discharge
 from Air Force
128. 3-12-76 Carter v. Reed 76-0413 D.D.C. Request for declaratory, 4-1-76: Transferred to S.D. Tex.,
 (76-C-50) (S.D. Tex., injunctive & mandamus Corpus Christi Div., as 76-C-50;
 C.C. Div.) relief re Air Force regulations 4-20-77: Pltf. ordered to pay filing
 governing & services fees;
 administrative proceedings 5-11-77: Pltf. pays fees per above
 resulting in less than order
 honorable discharge

*981
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
DISCHARGE FROM UNITED STATES AIR FORCE
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-------------------------------------------------------------------------------------------------------------------------------------------------------------------
129. 6-10-76 Carter v. Reed & USA 76-1012 D.D.C. Action for expungement 1-31-77: Judgment for pltf. ordering
 of certain Air Force consideration of request for correction
 records & seeking of records
 declaratory judgment &
 damages
130. 6-23-76 Carter v. Reed 76-H-1037 S.D. Tex. Action challenging 12-3-76: Pauper status denied
 Hou. Div. validity of general discharge 3-7-77: Dismissed for failure to
 from Air Force pay filing & service fees
131. 6-25-76 Carter v. USA 76-1181 D.D.C. To recover damages 8-4-77; Dismissed on grounds of
 stemming from discharge res judicata in light of Case List
 from Air Force Nos. 122-130 (see Supplemental File,
 Exhibit A)
UNITED STATES DISTRICT JUDGES
132. 4-27-76 Carter, et al v. 76-H-707 S.D. Tex. Mandamus action alleging 12-3-76: Pauper status denied;
 Carl O. Bue, Jr., Hou. Div. conspiracy against indigent 3-7-77: Dismissal for failure to
 James Noel, Woodrow prisoners in their pay filing & service fees
 Seals & John V. efforts to litigate
 Singleton, Jr., Judges,
 S.D. Tex., Hou. Div.
133. 10-8-76 Carter, et al v. 76-H-1663 S.D. Tex. Mandamus action based on 12-3-76: Pltf.'s pauper status
 John V. Singleton, Jr., Hou. Div. routine failure of defts. denied;
 & class of all U.S. to appoint counsel for 3-7-77: Pltf. dismissed from suit
 Dist. Judges indigent persons in nonhabeas for failure to pay filing & service
 corpus actions fees
MISCELLANEOUS ACTIONS
134. 5-2-61 Carter v. USA 7593 N.D. Ga. To recover for personal 10-8-62: Dismissed ($100 settlement)
 Atlanta Div. property lost by prison
 authorities

*982
 ALBERT H. CARTER V. UNITED STATES & ITS OFFICERS & OFFICIALS
 ============================================================
MISCELLANEOUS ACTIONS
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
135. 6-1-76 Carter & Wm. Houser v. 76-H-900 S.D. Tex. Mandamus class action 6-24-76: Dismissed as moot on
 Edward Levi Hou. Div. regarding service of grounds that changes requested
 process fees in in forma had been implemented
 pauperis suits
136. 10-8-76 Carter & Donald 76-H-1655 S.D. Tex. Challenges the constitutionality 12-3-76: Pltf.'s pauper status
 Montgomery v. Hou. Div. of federal denied;
 Edward Levi firearms statutes which 3-7-77: Pltf. dismissed from suit
 pertain to convicted for failure to pay filing & service
 felons fees;
 5-31-77: Case dismissed for lack
 of a case or controversy
137. 11-2-76 Carter v. Wm. Simon 76-2030 D.D.C. Mandamus compelling deft. 3-3-77: Dismissed for failure to
 to repay fine paid by satisfy the requirements for
 pltf. in 1961 for issuance of a mandamus
 unlawfully wearing a
 military uniform
138. 1-6-77 Carter v. Clarence G-77-10 S.D. Tex. Mandamus action commanding 3-29-77: Pltf. ordered to pay filing
 Kelley & Wm. Simon Galv. Div. defts. to restore & service fees within 20 days;
 funds wrongfully seized 4-12-77: Pltf.'s motion for
 clarification filed
139. 8-25-77 Carter v. Griffin 77-1468 D.D.C. Mandamus action compelling 9-20-77: Transferred to S.D. Tex.,
 Bell, M.F. Rousseau (H-77-1714) (S.D. Tex., defts. to effect Hou. Div., from District of Columbia
 & James A. Schlecht Hou. Div.) service of process in
 Case List Nos. 138, 171 &
 173

*983
 ALBERT H. CARTER V. EDWARD WADSWORTH, CLERK, U. S. COURT OF APPEALS FOR THE FIFTH CIRCUIT
 =========================================================================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
--------------------------------------------------------------------------------------------------------------------------------------------------------------
140. 3-19-76 76-H-457 S.D. Tex. Mandamus class action 12-3-76; Pauper status denied
 Hou. Div. seeking to compel deft. 2-28-77: Pltf.'s motion for
 to properly file all dismissal without prejudice
 mandamus petitions in granted
 forma pauperis
141. 9-21-76 76-H-1549 S.D. Tex. Challenges failure of 12-3-76: Pauper status denied;
 Hou. Div. Circuit Clerk to file 3-7-77: Dism'd for failure to pay
 mandamus actions filing & service fees
 ALBERT H. CARTER V. J. WEINGARTEN'S, INC.
 =========================================
142. 5-24-65 672,692 61st Dist. Court To recover $50,000 for 5-24-65: Pauper status contested;
 Harris County, Tex. alleged false arrest on 6-17-65: Pltf.'s motion for
 "hot check" charges voluntary dismissal granted
143. 10-28-76 76-H-1774 S.D. Tex. To recover $25,000 for 12-3-76: Pauper status denied;
 Hou. Div. malicious prosecution on 2-28-77: Pltf.'s motion for
 "hot check" charges voluntary dismissal granted
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
144. 4-10-61 Carter v. Blakely Misc. Docket D. Ariz. Libel action 6-16-61: Application to proceed
 Oil Co. No. 65 Phoenix Div. in forma pauperis denied
145. 4-18-61 Carter v. Donald C. 9136 W.D.N.Y. (Unable to verify) 4-18-61: Application to proceed in
 Barrett forma pauperis denied
146. 5-1-61 Carter v. Neely 677 M.D. Ga. Libel & slander action 8-16-61: Pltf. denied right to
 Peacock, Jr. Albany Div. proceed in forma pauperis (see
 Supplemental File, Exhibit B);
 9-18-61: Dismissed for failure to
 pay filing & service fees

*984
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-------------------------------------------------------------------------------------------------------------------------------------------------------------
147. 5-1-61 Carter v. Peter Van 678 M.D. Ga. Libel & slander action 8-16-61: Pltf. denied right to
 Wolveleard & Mary Albany Div. proceed in forma pauperis (see
 Van Wolveleard Supplemental File, Exhibit B);
 9-18-61: Dismissed for failure to
 pay filing & service fees
148. 5-1-61 Carter v. George 679 M.D. Ga. Libel & slander action 8-16-61: Pltf. denied right to
 Busbee Albany Div. proceed in forma pauperis (see
 Supplemental File, Exhibit B);
 9-18-61: Dismissed for failure to
 pay filing & service fees
149. 5-1-61 Carter v. Wm. Bolyard 680 M.D. Ga. Libel & slander action 8-16-61: Pltf. denied right to
 Albany Div. proceed in forma pauperis (see
 Supplemental File, Exhibit B);
 9-18-61: Dismissed for failure to
 pay filing & service fees
150. Not filed Carter v. Larry Unnumbered S.D. Tex. To recover for the 12-3-64: Permission to file in
 Brown & Copyright Hou. Div. filing of an allegedly forma pauperis denied
 Systems of America, false felony charge
 Inc.
151. 11-18-64 Carter v. American 131,039 County Court at Foreclosure on laborer's 7-12-65: Settlement announced
 Photocopy Law #1, Harris County, lien of $187.14 for
 Tex. services rendered
152. 12-14-64 Carter v. Dr. J. D. 15300-3 W.D. Mo. Petition for writ of 2-8-65: Petition dismissed
 Harris, Warden habeas corpus
153. 4-6-65 Carter v. Dr. J. D. 15447-3 W.D. Mo. Petition for writ of 5-13-65: Petition dismissed
 Harris, Warden habeas corpus

*985
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
-----------------------------------------------------------------------------------------------------------------------------------------------------------------
154. 5-31-65 Carter v. Handle 673,276 125th Dist. Court, To recover $50,000 for 6-15-65: Pltf.'s motion to dismiss
 Food Mart, Inc., Harris County, Tex. false arrest on worthless granted
 less check charge
155. 11-24-65 Carter v. Associated 687,741 125th Dist. Court, To recover $6,777.50 2-26-66: Defts.' motion for summary
 Transfer & Storage Harris County, Tex. against moving company judgment granted--pltf.'s action
 Co., Charles Baulch & & deputy constables for barred by statute of limitations;
 Monard Briggs negligence in moving & 12-29-66: Aff'd, 410 S.W.2d 830
 storage of pltf.'s personal (Tex. Civ. App.Waco 1966, no writ)
 property during
 July, 1962
156. 4-24-67 Carter v. Prosper-Tex., 731,516 157th Dist. Court, To recover for goods 8-23-67: Settlement announced
 Inc. Harris County, Tex. sold by pltf. as
 employee of Simoniz Co.
 to deft. as local retailer
157. 5-16-67 Carter v. L.W. 151,963 County Court at Law To recover $282.86 for 10-4-67: Judgment of $250.20
 Umphres No. 1, Harris County, auto care products sold entered for pltf.
 Tex. by pltf. as employee of
 Simoniz Co. to deft.
158. 6-12-67 Carter v. REA 152,704 County Court at Law To recover $964.64 for 3-11-69; Settlement announced
 Express, Inc. No. 2, Harris County, 40 cases of automobile
 Tex. wax lost in shipment
159. 10-22-71 Carter v. M.E. 888,166 190th Dist. Court, To recover $3,736,000 1-20-72: Pauper status denied;
 Schroeder Harris County, Tex. for malicious prosecution 4-7-75: Dismissed for want of
 prosecution
160. 2-8-72 Carter v. Southwest 201,914 County Court at Law To recover $995 for 9-29-72: Judgment of $900 entered for
 School Sales Co. No. 2, Harris County, services rendered pltf.
 Tex.

*986
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
------------------------------------------------------------------------------------------------------------------------------------------------------------------
161. 7-19-72 Carter v. Paul 72-G-114 S.D. Tex. Civil rights action seeking 8-3-72: Dismissed on grounds
 Ferguson, Judge of Galv. Div. injunctive relief that a federal court has no power
 the 149th Dist. Court against deft. in 3 actions to grant the relief sought;
 of Brazoria County, Tex. filed in his court (Case 12-6-72: Fifth Circuit denies
 List Nos. 65, 70 & 97 leave to appeal in forma pauperis
162. 8-14-72 Carter v. Carol Vance, 72-H-1093 S.D. Tex. Civil rights action to 4-23-73: Dismissed on grounds that
 Dist. Attorney, Hou. Div. declare invalid pltf.'s claim is remote & speculative & relief
 Harris County, Tex. 1962 federal perjury sought is barred by doctrine of
 conviction in Crim. abstention;
 No. 2158 & to enjoin 10-1-73: Aff'd (unpublished slip op.
 deft. from using such in no. 73-2350)
 upcoming state
 prosecutions
163. 9-15-72 Carter v. ABC 920,147 190th Dist. Court, To recover $1,000 for 1-10-74: Nonsuit entered by pltf.
 Bonding Co. Harris County, Tex. violation of bail bond
 agreement not to surrender
 pltf. to authorities
164. 3-15-74 Carter v. Albert Lee, 74-H-387 S.D. Tex. Seeks injunction ordering 3-15-74: Dismissed for failure to
 Justice of the Peace, Hou. Div. deft. to expunge state a claim upon which relief can
 Precinct No. 4, Harris from records judgment be granted;
 County, Tex. entered by him in No. 10-17-74: Aff'd (unpublished slip
 7179, Precinct No. 4, op. no. 74-1913)
 Justice Court, Harris
 County, Tex., on 1-23-73
165. 7-10-74 Carter v. Hannay, 988,683 151st Dist. Court, To recover $500,000 for 9-23-74: Action dismissed for failure
 Sr. Federal Dist. Harris County, Tex. false statement by deft. to pay filing fees;
 Judge, S.D. Tex., in answer to writ of 10-18-74: Notice of appeal filed;
 Hou. Div. mandamus 10-21-74: Dismissal set aside by trial
 court; pending
166. 7-24-74 Carter v. Accounts 990,393 164th Dist. Court, To recover $35,000 for 4-21-75; Pltf. moves for default
 Management Corp. of Harris County, Tex. harassment in attempt judgment
 Pasadena to collect debt

*987
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
167. 6-27-75 Carter v. Colton, 75-H-1138 S.D. Tex. To recover $10,500 for 12-3-76: Pauper status denied;
 Asst. Dist. Attorney Hou. Div. misrepresentation of 12-30-76: Pltf.'s motion to dismiss
 facts in connection with without prejudice granted
 contests to pltf.'s
 pauper status filed in state
 courts of Harris County, Tex.
168. 6-27-75 Carter, et al v. 75-H-1139 S.D. Tex. Mandamus class action 6-27-75: Dismissed as insubstantial
 Blask, U.S. Magistrate Hou. Div. contending that the & frivolous;
 requirement of 28 USC 10-28-75: Fifth Circuit denies leave
 2254(b) that habeas to appeal in forma pauperis
 corpus petitioners be
 required to exhaust state
 remedies is unconstitutional
169. 7-7-75 Carter v. Murray G. 75-H-1184 S.D. Tex. To recover $35,500 for 12-3-76: Pauper status denied;
 Kinney, Employee of Hou. Div. allegedly false statements 2-28-77: Pltf.'s motion to dismiss
 Tex. Dept. of Corrections in TDC offense granted
 reports
170. 6-15-76 Carter, et al v. B-76-212-CA E.D. Tex. Mandamus class action 7-20-76: Dismissed;
 Murray Harris, Clerk, Beaumont Div. challenging court
 E.D. Tex., & Charles processing of prisoner 11-15-76: Fifth Circuit denies
 Ruth, U.S. Magistrate complaints leave to appeal in forma pauperis
171. 6-23-76 Carter v. Frans O. 76-H-1035 S.D. Tex. Action to 12-3-76: Pauper status denied;
 Borup, Attorney Hou. Div. recover $471,250 for 2-28-77: Pltf.'s notice of
 ineffective assistance dismissal filed
 of defense counsel in
 state criminal prosecutions
172. 12-30-76 Carter v. Parvin J-76-C-142 E.D. Ark. To recover on a cause 12-30-76: Dismissed on grounds that
 Romines, Marion of action purchased by pltf. lacks standing to assert civil
 Thomas, & Clerk of the pltf. for violation of rights of third person;
 Circuit Court of civil rights of Robert 8-19-77: Aff'd, 560 F.2d 395 (8th
 Crittenden County, Ark. Lee Swanson by withholding Cir. 1977) (per curiam);
 of certain personalty 12-1-77: Rehearing denied
 taken in connection with
 arrest

*988
 ALBERT H. CARTER - MISCELLANEOUS ACTIONS
 ========================================
Case Date Additional
List No. Filed Pltfs./Defts. No. Court Nature of Action Disposition Summary
----------------------------------------------------------------------------------------------------------------------------------------------------------------
173. 2-15-77 Carter v. Caroll Lynn, H-77-259 S.D. Tex. Civil rights action to Dismissed this date on grounds that
 Earl Musick, John Hou. Div. recover $750,240 for save exceptional circumstances, a
 Heard, John Cahoon, damages allegedly suffered person has no standing in federal
 Sr., & the City of by Lawrence Allyn court to assert the rights of third
 Houston, Tex. Gross in connection with persons
 his criminal prosecution
 (purchased cause of action)
174. 4-11-77 Carter v. Gladney, G-77-62 S.D. Tex. Civil rights action to 4-22-77: Motion for order compelling
 Sheriff, Brazoria Galv. Div. recover $97,000 for violation service filed;
 County, Texas of due process of 8-15-77: Transferred to S.D. Tex.,
 law in connection with Hou. Div.
 sale of pltf.'s property 11-1-77: Motion to proceed in
 to satisfy two civil forma pauperis filed
 judgments
 ALBERT H. CARTER - PETITIONS FOR REMOVAL (MISCELLANEOUS)
 ========================================================
175. 9-24-71 Carter v. State of 71-H-1036 S.D. Tex. Petition for removal of 3-17-72: Dismissed as moot
 Tex. Hou. Div. 4 state criminal
 prosecutions
176. 1-20-72 In the Matter of the 72-H-91 S.D. Tex. Petition for removal of 1-20-72: Remanded for lack of
 Petition of Albert Hou. Div. civil action in 125th federal jurisdiction
 H. Carter Dist. Court, Harris
 County, Tex., styled
 A & S Liquidating Co., et
 al v. Albert Carter, et al,
 No. 840,345
177. 1-11-73 In the Matter of Albert 73-H-615 S.D. Tex. Petition for removal of 1-11-73: Dismissed for failure to
 H. Carter Hou. Div. civil action in Justice state a cause of action upon which
 Court, Precinct No. 1, relief can be granted
 Harris County, Tex., styled
 ABC Bonding Co. v.
 Albert H. Carter, No. 188,586
178. 11-5-74 Carter v. State of 74-H-1492 S.D. Tex. Petition for removal of 11-4-74: Dismissed for lack of
 Tex. Hou. Div. state criminal merit
 prosecution

*989 a. Scope of Court's Search

Although the Court has conducted an extensive investigation of plaintiff's case filings, the Court holds little hope that the above list of cases represents the sum total of plaintiff's litigation. Indeed, throughout the preparation of this opinion, the Court has continued to discover additional cases not located through earlier efforts. Thus, a brief description of the methodology employed to ferret out the legal work product of this prisoner hereafter follows so that other courts confronted with a similar problem involving this litigant will be cognizant of the scope of this Court's search. In addition, it is important to note certain tools which are available to gather this type of information.
Initially, the Court tracked down the cases filed by plaintiff in the Houston Division of the Southern District of Texas and classified them by defendant, subject matter and status. A brief review of these files, particularly the complaints, suggested other jurisdictions where plaintiff might have filed lawsuits. Additionally, it was the initial review in October, 1976, of the file in Carter v. Zuckert, 64-H-30, Case List No. 122, which led to the litigation in the Court of Claims, Case List No. 123, and the unearthing of the $5,486.76 judgment rendered in favor of plaintiff during 1976, thus prompting the denial of plaintiff's pauper status in the December 3, 1976, Order.
The search was then expanded at the federal level beyond the Houston Division. Of particular value were the large number of official United States Courts envelopes illegally re-used by Carter in correspondence with this District in apparent violation of 18 U.S.C. § 1719 (1970). By noting the various federal courts whose return addresses were printed on the envelopes, the Court had a reasonable idea as to other federal courts where Carter was active, and special contact was made with the respective clerks of these courts in order to gather data on plaintiff's case filings. The successful uncovering of plaintiff's filings elsewhere through the illegal use of these franked envelopes prompted the Staff Law Clerk in January, 1977, to send a letter to every federal district clerk in the United States inquiring about cases filed by Albert Houston Carter and asking for copies of docket sheets and pertinent pleadings. As a result of the efforts undertaken by the Staff Law Clerk, the Court learned of an additional 36 actions filed in 16 different federal courts, a number of which mirrored actions filed in this jurisdiction or elsewhere.
Certain select state courts also were contacted, namely the state district courts and county courts in Houston, Harris County, Texas, and Corpus Christi, Nueces County, Texas (plaintiff's two principal places of residence during the 1970's), and in Brazoria and Walker Counties, Texas (the geographic locations of prison units where plaintiff has been incarcerated in the 1970's). This survey netted 43 actions. The Court and the Staff Law Clerk made no effort to locate and contact state courts, particularly in Georgia, which may have been a center of plaintiff's legal activities prior to 1970. Thus, although the Court is reasonably certain that a great number of the cases filed by plaintiff at the federal level through January, 1977, have been located, the Court is equally certain that numerous state court actions filed by plaintiff, both pending and closed, remain undetected.
Finally, the Court used the services of LEXIS computer legal research now installed in the Southern District of Texas and searched the available federal and state court libraries for published opinions and citations which list Albert Carter as a named party. By using the search request "NAME (ALBERT W/3 CARTER)," the Court obtained citations to 22 reported opinions, many of which pertain to the civil cases listed above, and some of which relate to plaintiff's criminal history. See Carter v. United States, 325 F.2d 697 (5th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308 (1964); Carter v. State, 510 S.W.2d 323 (Tex.Crim.App.1974). LEXIS proved invaluable as a research tool in that it provided a ready list of reporter *990 citations to published Carter opinions, information not available from a review of the case files.
Having gathered together this mass of data, the Court undertook to sort it out by defendant, subject matter and chronology. Additionally, the summary information provided by the Harris County state courts indicated a need to review all of the files and pleadings in these actions in order to determine the extent to which actions facially similar were in fact repetitious or related to other discovered cases. It was during the course of this review at the county courthouse that the Court found certain pleadings which bear on an analysis of plaintiff's misuse of judicial processes, as discussed in Part III.B.2., infra.

b. Utilization of the List of Cases for Future Reference
As the List of Cases makes plainly evident, Carter thrives on the lack of communication and coordination between courts which, given their autonomous nature and the necessary focus on their own heavy caseload, generally remain unaware of the activities and experiences of other courts, even other court units within the same building. It is therefore no surprise that plaintiff, having the benefit and control of the overall picture, has been extremely successful against certain defendants in filing and processing identical or overlapping claims in courts which necessarily operate with limited peripheral vision and without the benefit of the grand design. Additionally, by use of certain abusive practices, Carter has succeeded in maintaining causes of action without the knowledge of defendants who might otherwise inform the court of other case filings. Thus, no doubt the most important function performed by this Court in this instance has been the mechanical gathering together of data on plaintiff's case filings in order to piece together the overall picture of plaintiff's legal efforts.
Although this Court can ill afford the time that has been spent in review of the activities of this plaintiff, it is anticipated that the preparation and full dissemination of plaintiff's List of Cases will net time savings for this and other courts in the future. The List of Cases should serve as a res judicata manual on plaintiff for all courts confronted with this litigant. More importantly, it should aid courts in the initial Section 1915(d) determination of whether or not an action filed by plaintiff in forma pauperis is frivolous or malicious. Finally, it is hoped that this Court's investigation, and those conducted by other courts in similar situations, see, e. g., Green v. Garrott, supra; Dickinson v. French, 416 F.Supp. 429 (S.D.Ala.1976);. Ex parte Tyler, 70 F.R.D. 456 (E.D.Mo.1975), will prompt further analyses of the total litigation picture of other multiple filers.

c. Pertinence of List of Cases to Present Inquiries
In assessing whether plaintiff has abused the privilege of proceeding in forma pauperis, it is indeed a highly probative fact that plaintiff has filed pro se a minimum of 178 actions, almost all of which have been filed in forma pauperis. However, the number of actions filed is not, by itself, a determinative factor which would legally support the use of this Court's power to regulate plaintiff as a litigant. See, e. g., Ruderer v. United States, 462 F.2d 897, 899 (8th Cir. 1972), appeal dismissed, 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1973). Instead, one must analyze the nature of plaintiff's litigation in light of the scope of the Section 1915 privilege and additionally pinpoint specific abuses to which appropriate responsive remedies can be tied.
As the List of Cases indicates, numerous of plaintiff's filings are interrelated and even outright duplicative of earlier filings. He has repeatedly sued certain defendants on the same or similar cause of action, the more prominent defendants in this category being Chipper's Nut Hut, Inc. (Case List Nos. 5 thru 14), Horace G. Cook (Case List Nos. 15 thru 19), Masco Mechanical Contractors (Case List Nos. 63 thru 67), The Money Tree Co. (Case List Nos. 68 thru 74), Savin Business Machine Co. (Case List Nos. 83 thru 88), Telectron, Inc. (Case List Nos. *991 96 thru 107), and the United States and its officers (Case List Nos. 120 thru 131, all relating to plaintiff's discharge from the United States Air Force).
One example of duplicative filings serves to demonstrate the deceptive proclivities of this plaintiff. The complaint in Case List No. 107, Carter, et al v. Telectron, Inc., et al, G-77-9, see Supplemental File, Exhibit D, filed in the Galveston Division on January 6, 1977, is identical to the complaint in Case List No. 106, filed in the Houston Division as Civil Action 76-H-1780 two months earlier on October 28, 1976, see Supplemental File, Exhibit E, except for an increase in the amount of damages sought. The December 3 Order of this Court finding plaintiff no longer indigent directed plaintiff to pay $27.00 in filing and service costs in Civil Action 76-H-1780 (Case List No. 106). In lieu of payment, plaintiff filed on December 22, 1976, a notice of dismissal prior to answer pursuant to Fed.R.Civ.P. 41(a)(1). Fifteen days later, he re-filed exactly the same cause of action in the Galveston Division of the Southern District of Texas (Case List No. 107), and as pointed out in Part III.A., supra, used an outdated form affidavit of indigency completed November 26, 1976, thereby failing to disclose those facts leading to this Court's December 3 Order which focused upon the $5,486.76 judgment paid to plaintiff on December 6, 1976.
Prior to June, 1976, this discreet re-filing in the Galveston Division would have gone undetected in Houston and effectuated plaintiff's aim to avoid this Court's December 3 Order and to continue to prosecute this cause of action in forma pauperis; however, because of added centralization as outlined in Part II., supra, this newer cause of action was brought to this Court's attention by the Staff Law Clerk and transferred to this Court's docket, at which time plaintiff was again ordered to pay $27.00 in filing and service fees by April 17, 1977, in order to proceed with this cause of action.
The List of Cases further establishes that many of these duplicative filings, although based on the same set of alleged facts, have been premised on differing jurisdictional bases and theories of recovery under state and federal case and statutory law. A review of the case files in this District discloses that usually these cases have been dismissed by a court at some early stage because of a legal flaw in jurisdiction or because the theory of recovery was patently frivolous. This Court cannot help but weigh seriously the circumstantial likelihood that Carter, a man experienced in the law and the principles of pleading, purposefully tainted the complaints in certain instances in order (1) to achieve the long-term harassment of a defendant within the technical scope of Fed.R.Civ.P. 41, see, e. g., Carter v. Telectron, 554 F.2d 1369 (5th Cir. 1977); Carter v. United States, 547 F.2d 258 (5th Cir. 1977), (2) to defer indefinitely any final determination on the merits of his factual allegations while the defendant is required to combat a series of actions, and (3) to badger the courts by continually forcing the expenditure of valuable judicial time to scrutinize and process these complaints.
In view of the full descriptions of these actions contained in the List of Cases, the Court will not recite at length in narrative form other types of harassment which could be pointed out with respect to a particular group of cases. One example is plaintiff's tendency to file a second identical cause of action in a second forum prior to disposition of the earlier action. Compare Case List Nos. 8 with 9 and 13 with 14. However, by alluding to the lengthy list of cases and the matters contained therein, the Court in no way intends to minimize the primary significance which must be attached to plaintiff's predictable pattern of vexatious litigation.
All in all, the List of Cases graphically demonstrates both in volume and substance the "vast potential for abuse inherent in Section 1915." Urbano v. Sondern, 41 F.R.D. 355 (D.Conn.1966).

2. Samples of Plaintiff's Abuse of the Judicial Process and the Section 1915 Privilege
The Court now turns to a description and analysis of certain patterned abusive practices *992 which have come to the attention of this Court during its review of this voluminous mass of litigation and which further support the need for remedial judicial action in order to protect the inviolability of the court and its lawful processes from plaintiff's insidious activities. These abusive practices are examined in the order that they would appear in the chronology of a cause of action, i. e., from the filing of the complaint to the securing of a default judgment to the filing of the answer. Coincidentally, such a discussion also generally progresses by comparison from a consideration of plaintiff's more commonplace ploys to his most flagrant efforts to deceive.

a. Variations in Plaintiff's Citizenship Assertions In Order to Facially Invoke Federal Diversity Jurisdiction
As with plaintiff's routine invocation of the in forma pauperis statute, some of the earliest case filings of plaintiff discovered by this Court also are illustrative of his willingness to assert without hesitation whatever citizenship allegations are necessary to raise the appearance of federal diversity jurisdiction. This Court has taken judicial notice of a certified transcript of an oral hearing conducted on April 28, 1961, by Federal Judge William A. Bootle of the Middle District of Georgia, Macon Division, in approximately 10 actions including Case List Nos. 120 and 146 thru 149. See Supplemental File, Exhibit F. Colloquies between Judge Bootle and plaintiff during the hearing illustrate the cavalier manner with which plaintiff approaches diversity allegations:
* * * * * *
"THE COURT: . . . Now, on No. `F', you have two suits, one is against Howard A. Davis. He's a Colonel in the Air Force, is he?
"MR. CARTER: That's correct.
"THE COURT: And you allege that he's a citizen `of a state other than Arkansas'?
"MR. CARTER: Yes sir, actually, I do not know what state he is from."
* * * * * *
"THE COURT: Well, unless you know where Howard A. Davis lives, and unless he's a citizen of Georgia, you still don't have any jurisdiction over him?
"MR. CARTER: In that case, sir, may I amend both suits to allege that he's a citizen of the State of Georgia?
"THE COURT: Now, that raises a question of good faith. Are you just willing to allege anything, without knowing whether it's true or not?
"MR. CARTER: No Sir, that's the reason I originally alleged that he was a citizen of a state other than Arkansas. Actually, if I remember correctly, he is a citizen of the state of Ohio, but I'm not absolutely positive.
"THE COURT: Well, if he's a citizen of the State of Ohio, this court would have no jurisdiction of him at all, and I just refuse to permit you to file that suit; and I will give it back to you, if you want it, or do you want me to keep it?
"MR. CARTER: Yes sir, I'll take both of them, if you please.
"THE COURT: Well, maybe I had better let the Clerk keep these and let the record show that Mr. Carter states in his place that he does not know where Howard A. Davis resides or what state he's a citizen of. He thinks it's Ohio, but he was willing to amend and allege Georgia, and that being true, I don't think it's in good faith, and I'm not going to file this suit in forma pauperis."
* * * * * *
"THE COURT: All right, we come to No. `G' now, and that damages for false arrest and you're suing Colonel John E. Morwood, is that right?
"MR. CARTER: That's correct, sir.
"THE COURT: And you allege there that he's a citizen of a state other than Arkansas?
"MR. CARTER: Yes sir, I'm in a position to definitely amend that suit at this time, sir, and state that he is definitely a citizen of the State of Louisiana.
"THE COURT: That being true, this Court, in my judgment, has no jurisdiction *993 and there's no use to file it, because the law sayswell, I will read it to you:
`A Civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.'
"MR. CARTER: May I then amend the suit in this way, sir, to allege that the Defendant, John E. Morwood is a resident of the State of Georgia?
"THE COURT: That won't do; he's got to be a citizen. This word `reside' means this is his domicile. He's got to be a citizen.
"MR. CARTER: May I inquire then of the Court, if he's a citizen of one state and residing in another, where can he be sued?
"THE COURT: Wherever he's a citizen, his domicile.
"MR. CARTER: I see; very well, sir."
* * * * * *
"THE COURT: . . . Now, No. `H', this is a suit against A. W. White for prolonged incarceration, and you allege that he is a citizen of a state other than Arkansas?
"MR. CARTER: Yes sir.
"THE COURT: Where is his citizenship?
"MR. CARTER: I have no idea.
"THE COURT: Draw me a similar order on that, Mr. Clerk. You can sue him wherever his citizenship is, as I understand it."
Id. at 44, 46-47, 49-50. Judge Bootle later expressed in writing that
"[b]ecause of the reckless abandon with which plaintiff is willing to litigate and the carelessness with which he is willing to make allegations as to diversity of citizenship, this Court is of the opinion that none of these suits should be permitted to proceed further in forma pauperis." Memorandum and Order, August 16, 1961, C.A. No. 677 et seq., at 4; see Supplemental File, Exhibit B.
Plaintiff continues fifteen years later to file with "reckless abandon" and to assert whatever citizenship is necessary to invoke federal diversity jurisdiction. For example, plaintiff in recent years, and during his stable incarceration at the Texas Department of Corrections, has asserted in some actions that he is a citizen of Texas and in others that he is a citizen of Georgia.[3] The law is that in determining the state citizenship of a prisoner, one looks to his domicile prior to incarceration. See 13 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3618 (1975). Furthermore, a person has only one domicile for purposes of citizenship. Id. § 3612, at 715. Therefore, without regard to the merits of plaintiff's assertion of a particular citizenship, whether it be Georgia or Texas, it is clear that plaintiff can only have been a citizen of one state since the time of his incarceration.
Nevertheless, plaintiff has varied his allegation of domicile depending on the citizenship of his opponent. Thus, having failed in his effort to recover from Texas citizens in civil rights actions, plaintiff has re-filed certain actions as diversity actions asserting a Georgia citizenship. For example, compare the complaint in Carter v. Moss, Asst. Dist. Attorney, Harris County, Texas, C.A. 75-H-834, Case List No. 75, Supplemental File, Exhibit G, (slander, civil rights, 42 U.S.C. § 1981) with Carter v. Moss, C.A. 76-H-1036, Case List No. 76, Supplemental File, Exhibit H, (slander, diversity, 28 U.S.C. § 1332). Indeed, it is easy to pinpoint the date on which plaintiff first utilized the ruse of filing against Texas citizens as a Georgia citizen under the diversity statute: June 23, 1976. On this date, plaintiff filed in the Southern District of Texas four actions, Case List Nos. 56, 76, 82 and 171, two of which, Action Nos. 76 and 82, were *994 against earlier defendants and on the same causes of action, but asserting a diversity jurisdictional base.

b. Plaintiff's Failure to Specify Prior Similar Actions and Disposition
Although an action filed by plaintiff may be identical to an earlier-filed action, plaintiff typically avoids any reference in the complaint or other pleadings to prior lawsuits, his motive for lack of disclosure being readily apparent when one examines the extensive List of Cases. Local Rule 5 of the Southern District of Texas requires that litigation pending in this or any other court which is related to a newly-filed action be disclosed at such time as the related nature of the litigation is apparent.[4] It is clear from a comparison of plaintiff's complaints in the same or similar causes of action filed in this district that plaintiff, as a pro se litigant before this Court, generally has failed to apprise this Court of related and identical litigation.
In addition to Local Rule 5, the form Complaint for Violation of Civil Rights which is provided to prisoner litigants within the Southern District of Texas asks:
"Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?"
In those cases where plaintiff has submitted the form complaint, his usual response has been "I have not begun any state or federal lawsuit on this cause of action".
As an example of plaintiff's noticeable reluctance to disclose similar litigation, the complaint in Carter v. Chipper's Nut Hut, Inc., G-77-8, Case List No. 14, Supplemental File, Exhibit I, makes no reference to the identical action, Case List No. 13, which was then pending in the Middle District of California. On October 26, 1977, the Court received from plaintiff a "Suggestion of Involuntary Dismissal for Want of Jurisdiction" in Case List No. 14. See Supplemental File, Exhibit J. In the pleading, plaintiff requested that this Court involuntarily dismiss this action for lack of jurisdiction so that he might avoid the use of a "notice of voluntary dismissal" and any problem with the automatic bar to re-filing which arises pursuant to Fed.R.Civ.P. 41(a)(1) once a plaintiff twice voluntarily dismisses the same cause of action through use of a notice of dismissal. In support thereof, plaintiff
"suggests upon the record that certain events which have occurred after this civil action was commenced make it apparent that the Court lacked jurisdiction of the subject matter of this action at the time it was commenced, and that federal jurisdiction is lacking at the present time, in that the $10,000 minimum amount-in-controversy requirement of 28 U.S.C. § 1332 is not met."
The "certain events" to which plaintiff is referring are the orders of May 23, 1977, and June 30, 1977, entered in Case List No. 13, which determined that plaintiff had duplicated claims in an attempt to meet the $10,000 jurisdictional requirement of 28 U.S.C. § 1332. See Supplemental File, Exhibits K and L. At an earlier time, this Court no doubt would have routinely entered without further inquiry an involuntary dismissal in accordance with plaintiff's request. However, being independently cognizant of plaintiff's repeated filings against this particular defendant and the "certain events" to which plaintiff refers, the Court is in a position to assess more knowledgeably the appropriate course of action, notwithstanding plaintiff's failure to comply with Local Rule 5.

c. The Obtaining of Default Judgments by Use of the Texas Long Arm Statute
Having reviewed case files at the state as well as the federal level, certain other tactics of plaintiff have surfaced which typify *995 the extent to which plaintiff has sought to gain a favorable judgment without any notice whatsoever to the defendant. The remainder of Part III. focuses on these procedures.
Plaintiff devised the technique in the early 1970's of using the Texas long-arm statute and the Texas Secretary of State as a means of facially establishing proper service of process on out-of-state defendants, regardless of whether they were registered to do business in the State of Texas. Certain actions against Chipper's Nut Hut, Inc., and pleadings filed therein, illustrate plaintiff's technique, which has been used against multiple defendants.
In Case List No. 6, filed September 24, 1971, plaintiff attempted to obtain a default judgment against Chipper's by serving the Texas Secretary of State pursuant to the Texas long-arm statute. Following a denial of plaintiff's motion for default judgment by Federal Judge Woodrow Seals at an oral hearing, plaintiff filed a notice of dismissal on July 21, 1972.
Plaintiff was more successful in the Harris County state courts where he obtained during 1971 and 1972 default judgments of $7,850 in Case List No. 5 and $505.16 in Case List No. 7. Plaintiff thereafter filed actions in California to collect on these default judgments, including Case List No. 13 filed January 8, 1976. In Case List No. 13, the district court for the Middle District of California ruled on June 30, 1977, that it lacked subject matter jurisdiction in that plaintiff had fraudulently duplicated claims in order to satisfy the $10,000 amount-in-controversy requirement of 28 U.S.C. § 1332. See Supplemental File, Exhibit L. Chipper's, in a motion for summary judgment filed in Case List No. 13, also submitted affidavits to prove that plaintiff had, through the misuse of judicial and statutory procedures, wrongfully obtained the two earlier default judgments.
This contention was not addressed by the California district court in light of its finding of lack of jurisdiction. However, such allegations are extremely relevant to this Court's inquiry. Accordingly, the Court has obtained copies of the affidavits filed by Chipper's in Case List No. 13. The affidavit of Hugh L. Doddridge, President and General Manager of Chipper's Nut Hut, Inc., filed on September 23, 1976, see Supplemental File, Exhibit M, recites in minute detail a series of events, fully supported by documentary attachments, which call into serious question the validity of the two default judgments. The affidavit recites that plaintiff, under the Texas long-arm statute, submitted copies of the complaint in Case List No. 5 to the Harris County Sheriff for service on the Texas Secretary of State, and instructed the Sheriff in an attached letter that:
"the statute involved, Article 2031a, Section 4, V.A.C.S., specifies that the failure to forward a copy by certified mail does NOT affect the validity or completeness of service. I therefore request that the serving officer be instructed to leave the copies with the Secretary of State, or any of his office staff, regardless of their objections to receiving the process. In short, under the statute, service of process is validly complete upon delivery of the Secretary of Stateregardless of what the Secretary does with the copies, and even if he does nothing with them."
The affidavit further alleges that plaintiff knowingly provided a false address of defendant in South Francisco, California, for purposes of service, that defendant therefore was never served with a copy of the complaint either by the Texas Secretary of State or by plaintiff personally, and that defendant did not learn of the default judgment until the filing of Case List No. 13 five years later. Attached to the affidavit are copies of numerous letters from plaintiff during this same time period indicating that plaintiff knew defendant's proper address in Los Angeles, California.
The affidavit recites a similar fact pattern in connection with Case List No. 7, with the following variations: (1) plaintiff used a different false address for defendant at "1001 East Southmore, Suite 409, Pasadena, Texas 77502," and (2) having obtained the default judgment, plaintiff on May 18, *996 1972, sent a copy of the default judgment to defendant at its correct address in Los Angeles.
The recitations in this affidavit, while not constituting evidence in cases filed in this Court, are fully documented with numerous attachments and serve to demonstrate that plaintiff has engaged repeatedly in schemes involving fraudulent conduct in an effort to unlawfully obtain default judgments on out-of-state defendants. Indeed, one court, in setting aside a default judgment obtained by plaintiff pursuant to this deceitful practice and dismissing his action with prejudice, has enjoined plaintiff from proceeding against The Money Tree Co. in the State of Texas on the grounds that
"The Money Tree Company is not subject to the jurisdiction of a Texas Court by virtue of doing business within the state within any statutory provision for substituted service for purposes of the cause of action alleged by Albert H. Carter."
Carter v. The Money Tree Co., No. 55,692D, Case List No. 70. Order of June 19, 1973, at 2, Supplemental File, Exhibit N, aff'd, 504 S.W.2d 783 (Tex.Civ.App.Houston [14th Dist.]), cert. denied, 419 U.S. 865, 95 S.Ct. 120, 42 L.Ed.2d 102 (1974).
Thus, in promulgating appropriate remedial measures as to this plaintiff, direct notice to a defendant of a newly-filed complaint appears imperative.

d. Failure to Serve Pleadings on Defendants
In addition to plaintiff's use and interpretation of the Texas long-arm statute in a manner designed to avoid personal service on foreign corporations such as Chipper's Nut Hut, Inc., plaintiff, in a letter to the Texas Attorney General's Office of December 8, 1975, introduced by the Attorney General as Exhibit No. 1 at an April, 1976, oral hearing before the United States Magistrate in Carter v. Wallace & Estelle, C.A. 75-G-89, Case List No. 30, see Supplemental File, Exhibit O, further expresses both his desire to litigate ex parte and his acknowledged lack of candor with the Court with regard to certificates of service:
"Dear Sir:
"At the present time, I have approximately a dozen cases pending in the various federal courts, mostly in the Southern District of Texas, the Fifth Circuit, and the Supreme Court of the United States, against various state officials represented by you. I am a prisoner at the Ellis Unit of the Texas Department of Corrections.
"We do not have a `writ room' at this Unit, as other units have. We are not provided onionskin paper; it is not sold in the commissary; and we are not permitted to order it from outside sources in any manner. Bond type paper is sold in the commissary at 2 cents a sheet, which is a prohibitive cost, as I am indigent.
"This is to advise you, therefore, that henceforth I shall not serve on you copies of any pleadings filed in actions against state officials whom you represent, unless the pleading is such that you must answer in order that the action may proceed further, such as written interrogatories. Because the court clerks refuse to file pleadings without a certificate of service, I shallof necessityinclude a certificate of service on every pleading, even though on many pleadings it will be a false certificate.
"This is to further advise you that I have many friends here who have numerous cases pending also, and I am showing them a copy of this letter, advising them to follow suit.
"If you wish to take up this matter with the federal courts, I shall be delighted.
 Sincerely yours,
 Albert H. Carter"

e. The Possibility of Forged Answers Submitted by Plaintiff in Actions Filed by Him
The Court has discovered certain answers purportedly filed by defendants in three state court actions during January, 1972, which, because of their similar, unusual content and other documents in the files, raise the serious question as to whether plaintiff wrongfully submitted forged answers *997 on behalf of defendants for filing in actions brought by him in order to establish in personam jurisdiction over these defendants and to place in the record admissions of liability for purposes of a subsequent motion for summary judgment.
An appropriate starting point for analyzing this most serious of potential abuses is the discussion by Chief Justice Bert H. Tunks, Texas Court of Civil Appeals, Fourteenth District, in an opinion reported at 504 S.W.2d 783 (Tex.Civ.App.Houston [14th Dist.]), cert. denied, 419 U.S. 865, 95 S.Ct. 820, 42 L.Ed.2d 102 (1974) in Case List No. 70, Carter v. The Money Tree Co., No. 55,692D. As described in Case List No. 70, plaintiff obtained a default judgment in the 130th District Court, Brazoria County, Texas, against The Money Tree Co. through use of the Texas long-arm statute. Thereafter, the defendant appeared, filed an application for a bill of review, and upon review the district court withdrew the prior judgment and dismissed plaintiff's cause of action with prejudice. See Supplemental File, Exhibit N. In affirming the district court, Chief Justice Tunks observed:
"The pleading filed by the Money Tree Company has attached to it a number of exhibits. They do not constitute evidence and are not considered as such. But they do recite facts suggesting that Carter has engaged in fraudulent conduct in an effort to unlawfully obtain a judgment on a spurious claim. It is recited that he has filed numerous suits in numerous different courts on the same claim as that here alleged. It is recited that in one of those suits in a Texas court he caused to be filed a forged answer in an effort to show in personam jurisdiction over this foreign corporate defendant. These recitations demonstrate facts that could have been proven to the trial judge. They would sustain a conclusion that Carter maliciously and without probable cause filed multiple suits on the same claim for the purpose of harassment. There may be shown such an abuse of judicial processes as to justify the denial to the offender of access to the court or any of its procedures." (citations omitted)
Id. at 785.
Having reviewed the case files at the state level in Harris County, Texas, this Court has no difficulty in concluding that the other suit to which Chief Justice Tunks refers is Case List No. 69, Carter v. The Money Tree Co., No. 893,613 filed December 22, 1971. Attached as Exhibit 1 to this opinion is a certified copy of the answer filed on behalf of defendant on January 24, 1972. Attached as Exhibit 2 is a certified copy of a letter filed August 25, 1972, from Mr. J. J. Sanders, President, The Money Tree Co., to Mr. Ray Hardy, District Clerk, Harris County, Texas, reciting the facts alluded to by Chief Justice Tunks which prompted his above-recited observations.
However, this Court, in reviewing the state court files, also discovered two additional suspect answers filed on behalf of other defendants within two weeks of Exhibit 1. The answers are strikingly similar to Exhibit 1 and extremely suspect in view of the admissions of liability contained therein. Therefore, attached as Exhibit 3 is a certified copy of an answer filed on January 13, 1972, in Case List No. 159, Carter v. Schroeder, C.A. No. 888,166, and attached as Exhibit 4 is a certified copy of an answer filed on January 17, 1972, in Case List No. 63, Carter v. Masco Mechanical Contractors, C.A. No. 893,617. These additional answers submitted on behalf of two other defendants in the same narrow time period, and which contain similar unusual admissions to say the least, further support Chief Justice Tunks' analysis. Moreover, recent pleadings filed in a habeas corpus proceeding currently active in this District further suggest Carter's propensity to submit forged documents in order to obtain favorable rulings on the merits.[5] The ready inference to be drawn is that, although not proved beyond *998 all doubt, these exhibits suggest a type of conduct which is extremely serious in nature and is fully consistent with his 1962 federal perjury conviction based on his reliance on a falsified military flight record, see Carter v. United States, 325 F.2d 697, 700 (5th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308 (1964), and, more importantly, the other verified practices outlined above.
Having thus described in Part III. the spectre of abuse which taints Carter's litigation, the Court turns to a resolution of the questions posed at the outset of this opinion, beginning with a consideration of plaintiff's further utilization of 28 U.S.C. § 1915.

IV. PROMULGATION OF AN EFFECTIVE COURSE OF ACTION TO PREVENT FUTURE ABUSE
The motions filed by plaintiff with regard to the 17 actions dismissed by this Court on March 7, 1977, and the information gathered and reviewed by this Court in response to these motions have raised questions of law premised on three statutes and rules: (1) the further availability to plaintiff of the in forma pauperis statute, 28 U.S.C. § 1915; (2) appropriateness of dismissals with or without prejudice pursuant to Fed.R.Civ.P. 41; and (3) the necessity of judicial regulation pursuant to the "All Writs" statute, 28 U.S.C. § 1651.

A. Tighter Control of the Section 1915 Privilege
"[T]he short of the matter is that no one, rich or poor, is entitled to abuse the judicial process." Hardwick v. Brinson, 523 F.2d 798, 800 (5th Cir. 1975). So recognized Congress in 1892 when, in passing the provisions authorizing in forma pauperis prosecutions, it included the discretionary controls of Section 1915(d) in order to protect the courts and defendants against frivolous lawsuits as well as plaintiffs motivated by malice. See O'Connell v. Mason, 132 F. 245, 247 (1st Cir. 1904); see generally Note, Petitions to Sue In Forma Pauperis In Federal Courts: Standards and Procedures for the Exercise of Judicial Discretion, 56 Boston U.L.R. 745, 746-47 (1976).
The Fifth Circuit Court of Appeals has adopted a test for frivolity under section 1915(d) which authorizes denial of leave to proceed in forma pauperis if the submitted action is "without arguable merit" as a matter of fact or law. See Taylor v. Gibson, 529 F.2d 709, 714-15 (5th Cir. 1976); Watson v. Ault, 525 F.2d 886, 892 (5th Cir. 1976). The appropriate test for a "malicious" lawsuit, however, has not to the knowledge of this Court been addressed by the Fifth Circuit, cf., Hardwick v. Brinson, supra, nor has the appellate court confronted the problems of remedy posed by a number of cunning pro se prisoner litigants such as plaintiff who, in bad faith and on a long-term basis, have abused both the judicial process and the privilege of litigating at public expense.
On the basis of the overview afforded by the List of Cases in Part III.B.1., supra, and the numerous examples of frivolous and malicious filings documented therein, the continuous misrepresentation by plaintiff of his financial status, see Part III.A., supra, and the additional deceptive practices pointed out in Part III.B.2., supra, it is clear to this Court that closer screening of plaintiff's case filings pursuant to Section 1915(d) is compelled. Because of his prior pattern of abuse, which this Court has no reason to expect will abate, plaintiff henceforth should carry a stronger burden of proving that he is economically unable to pay the initial filing and service fee or some portion thereof, see Braden v. Estelle, 428 F.Supp. 595 (S.D.Tex.1977), and that the action is in good faith and not "without arguable merit" or malicious.
Thus, although complaints hereafter submitted by plaintiff in forma pauperis will *999 be routinely filed by the Clerk upon receipt in accordance with Watson v. Ault, supra, and Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972), the Court hereby adopts a special procedure recently approved by the Fourth Circuit Court of Appeals whereby any future request by plaintiff to proceed in forma pauperis will be denied, except upon a showing of good cause to this Court's satisfaction as to why he should be permitted to sue on a particular cause of action at public expense. See Graham v. Riddle, 554 F.2d 133 (4th Cir. 1977). Thus, if plaintiff's entitlement to proceed in forma pauperis is not readily apparent from the face of the complaint and affidavit of indigency, plaintiff will be directed to submit a supplemental show cause pleading in which he, for example, is ordered to (1) state under oath, and with documentary support, including the certificate of a bank officer, the current balance of any bank account on which he or any member of his family is a signatory, including Corpus Christi Bank & Trust, see Supplemental File, Exhibits P, Q; (2) list in accordance with the format used for the List of Cases herein all prior actions, previously filed (a) on the same, similar or related cause of action, and (b) against one or more of the defendants, including predecessors or successors in interest or office; and (3) describe under oath and in detail in the form of a more definite statement the specific facts supporting his claim, including the attachment of supportive documentation, see Taylor v. Gibson, supra at 717.
Any bad faith misrepresentation, lack of disclosure or technical construction of any future inquiry by this Court in order to suppress relevant information will result in automatic denial of leave to proceed in forma pauperis and, if appropriate, the issuance of a show cause order why plaintiff should not be held in contempt of court. Additionally, the presumption of frivolousness or maliciousness will be especially strong where the submitted complaint is based on facts which occurred prior to his present incarceration in 1974.
Recently plaintiff has filed motions seeking this Court's permission to proceed in forma pauperis in the 17 actions dismissed by this Court eight months ago on March 7, 1977, stating under oath that all monies received by him are contributed to the support of his wife, who has high medical expenses due to an abdominal tumor, and his minor daughter Nancy Carter. The motions to reinstate these causes of action pursuant to 28 U.S.C. § 1915 will be denied.
Plaintiff received a $5,486.76 collectible judgment against the United States in January, 1976. From that time forward, he prosecuted in bad faith under Section 1915 approximately 40 actions pending in this Court and misrepresented under oath his financial status in newly-filed actions. Only this Court's accidental discovery of the Court of Claims judgment in the fall of 1976 prevented Carter's continued, successful deception of his drastically improved financial situation.
Following this Court's December 3, 1976, Order, plaintiff collected the judgment and in correspondence and pleadings indicated an intent to pay the filing and service fees in certain causes of action. See Supplemental File, Exhibit R. Although thus acknowledging that he had ample funds to pay the $354.00 in fees, plaintiff opted not to pay, thus resulting in dismissal of these actions. Therefore, it is of little moment to this Court that plaintiff has now decided that his funds must be used for other purposes or even that he has exhausted the court award, as such a response necessarily was anticipated by this Court.
Given plaintiff's misuse of the Section 1915 privilege in connection with these 17 actions, the fraud practiced upon the Court as to his financial situation, and his ability during the course of these actions to pay the modest filing and service fees ordered, the Court, in the exercise of its discretion, not only denies plaintiff's motion but further will not permit plaintiff in the future to utilize the in forma pauperis statute to prosecute these present causes of action in this Court, regardless of his financial situation.

*1000 B. Dismisssal With or Without Prejudice Under Rule 41

1. Actions Dismissed on March 7, 1977
Pursuant to Fed.R.Civ.P. 41(b), the Court may enter on its own motion involuntary orders of dismissal for failure to comply with a court order, see 9 C. Wright & A. Miller, Federal Practice and Procedure § 2369 n.60 (1971), in this case an order to pay initial filing and service fees where plaintiff is determined no longer to be a pauper. As this Court has indicated above, it will not favorably entertain motions for permission to proceed in forma pauperis in the 17 actions dismissed on March 7, 1977. However, if plaintiff attempts to re-file these actions and pay the fees or if he attempts to file in another court, it becomes important to determine whether the actions were dismissed with or without prejudice.
Rule 41(b) establishes the presumption that involuntary dismissals are with prejudice, although the Court has the discretion to enter the dismissal either with or without prejudice. However, Rule 41(b) provides that the dismissal must be without prejudice if it is premised on a lack of jurisdiction, improper venue, or failure to join a party under Rule 19. See Carter v. Telectron, Inc., 554 F.2d 1369 (5th Cir. 1977). Additionally, the United States Supreme Court held in Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (hereafter "Costello") that the dismissal cannot be res judicata, i. e., with prejudice, to a second action if "the merits could not be reached for failure of the plaintiff to satisfy a precondition," id. at 286, 81 S.Ct. at 545, interpreted by one court to include a dismissal for failure of a plaintiff to post an initial security-for-costs bond. Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968).
The rationale behind the Costello judicial exception to the "with prejudice" presumption of Rule 41(b), as applied in Saylor v. Lindsley, supra, is that involuntary dismissals should not be with prejudice where the defendant has not been put to the burden of preparing to meet the merits because of plaintiff's failure to satisfy an initial precondition. Costello, supra, 365 U.S. at 286, 81 S.Ct. 534; Saylor v. Lindsley, supra at 969. The Costello exception, and its supporting rationale, are not easily applied to these unique facts. On the one hand, the Court's involuntary dismissals entered in the 17 actions on March 7, 1977, for failure of plaintiff to pay filing and service fees appear at first blush to fit within the special rule calling for dismissal without prejudice announced in Saylor v. Lindsley. On the other hand, plaintiff had prosecuted these actions in forma pauperis up until the time of the Court's order to pay fees in light of plaintiff's changed financial situation. As a result, a number of defendants, especially in the older suits, have expended time and effort to defend these actions as well as other similar filings, thus undercutting the validity of the rationale for the Costello exception.
Thus, in lieu of applying an across-the-board rule, the Court has undertaken a case-by-case review of the 17 actions and has considered all pertinent circumstances in deciding whether the dismissals are with or without prejudice, including (1) the legal principles announced above, (2) the status of each lawsuit at the time the orders of dismissal were entered, and (3) prior or subsequent filings on the same or related cause of action. Because of the Court's ruling precluding future Section 1915 prosecution of these particular suits in this Court, a presumption has been applied under the circumstances, contrary to that provided for in the rule, that the dismissals are without prejudice where indicated so that plaintiff may re-file with the payment of fees. The Court therefore determines as follows:

Carter v. Telectron, Inc., 71-H-994, Case List No. 96: dismissed without prejudice

Carter v. Kern, 72-H-344, Case List No. 42: dismissed without prejudice

Carter v. Heard, 74-H-42, Case List No. 43: dismissed without prejudice

Carter v. Estelle, 75-H-314, Case List No. 29: dismissed without prejudice

*1001 Carter v. Savage, Estelle, et al, 75-H-1679, Case List. No. 33: dismissed without prejudice

Carter v. Texas Agribusiness Co., 75-H-1992, Case List No. 4: dismissed with prejudice in view of prior similar filing and disposition in Carter v. Calhoun Cold Storage Co., No. 888,172, Case List No. 3

Carter v. Hardy, 76-H-458, Case List No. 55: dismissed without prejudice

Carter v. Bue, et al, 76-H-707, Case List No. 133: dismissed with prejudice in light of subsequent re-filing of same class action complaint by Paul Shipp as named plaintiff, Shipp v. Bue, et al, H-77-467, see note 6[6]

Carter v. Reed, 76-H-1037, Case List No. 130: dismissed with prejudice in light of the recent opinion entered in Carter v. United States, 76-H-1181, Case List No. 131, on August 4, 1977, finding that any suits challenging the validity of plaintiff's 1960 discharge from the United States Air Force are barred by res judicata, see Supplemental File, Exhibit A

Carter v. Hardy, 76-H-1044, Case List No. 56: dismissed without prejudice

Carter v. Wadsworth, 76-H-1549, Case List No. 141: dismissed with prejudice in light of prior similar filing and disposition in Carter v. Wadsworth, 76-H-457, Case List No. 140

Carter v. Thomas, 76-H-1550, Case List No. 111: dismissed without prejudice
The other five suits included in the March 7, 1977, Order were:

Carter, et al v. Thomas, 75-H-21, Case List No. 108

Carter, et al v. Estelle, 76-H-1342, Case List No. 34

Carter, et al v. Thomas, 76-H-1446, Case List No. 110

Carter, et al v. Levi, 76-H-1655, Case List No. 136

Carter, et al v. Singleton, et al, 76-H-1663, Case List No. 133
Plaintiff was dismissed from these multi-plaintiff actions and denied leave to proceed in forma pauperis. These dismissals are without prejudice. Additionally, plaintiff is reinstated as a party plaintiff in Carter, et al v. Levi, 76-H-1655, Action No. 136, in light of the fact that co-plaintiff Donald Montgomery paid in full the filing and service fees prior to plaintiff's dismissal from the action.

2. Actions Subject to Order of March 29, 1977
Additionally, on March 3, 1977, Civil Actions G-77-8, G-77-9 and G-77-10 (Case List Nos. 14, 107 and 138) were transferred to this Court. Having been filed in forma pauperis, this Court entered an Order of March 29, 1977, directing that filing and service fees be paid within twenty days to avoid dismissal. Plaintiff has not paid the requisite fees. Rather, he has filed a motion to clarify whether the dismissals contemplated would be with or without prejudice and asking for an additional twenty days after receipt of such clarification to pay the ordered fees. With reference to these three cases the Court rules as follows:
*1002 In Carter v. Chipper's Nut Hut, Inc., Civil Action G-77-8, Case List No. 14, one of plaintiff's chief adversaries, plaintiff has filed a Suggestion of Involuntary Dismissal for Want of Jurisdiction. As previously discussed in Part III.B.2.b., supra, Judge Albert Lee Stephens, Federal Judge for the Central District of California, determined in Orders of May 23, 1977, and June 30, 1977, see Supplemental File, Exhibits K and L, that plaintiff could not validly establish a $10,000 amount in controversy in order to support federal jurisdiction. Accordingly, the cause of action is dismissed without prejudice for lack of jurisdiction.
Carter v. Telectron, Inc., et al, Civil Action G-77-9, Case List No. 107, is similar or identical in substance, although differing in jurisdictional allegations, to Case List Nos. 98, 99, 100, 103, 104 and 106, thereby suggesting a malicious intent. Moreover, this Court finds that these causes of action, all of which allege that employees of Telectron, Inc., wrongfully conspired and falsely testified to convict him of embezzlement in 1972, and following retrial, in 1974, are without arguable merit and therefore frivolous in accordance with current case law on this point. See Dickinson v. French, 416 F.Supp. 429, 434 (S.D.Ala.1976); Daves v. Scranton, 66 F.R.D. 5 (E.D.Penn.1975). This cause of action is therefore dismissed with prejudice pursuant to 28 U.S.C. § 1915(d).
Carter v. Kelley, et al, Civil Action G-77-10, Case List No. 138, will be dismissed without prejudice unless plaintiff, within twenty days, pays $21.00 in filing and service fees.
By dismissing certain of these actions without prejudice, this Court in no way expresses any opinion on the meritorious or frivolous nature of these actions.

C. Use of the "All Writs" Statute To Control Future Abuse of the Judicial Process
Although the Southern District of Texas now is cognizant of plaintiff's procedures and therefore in a position to anticipate and control any further misuse of legal processes, other jurisdictions remain open prey. On the basis of the information compiled on this litigant, this Court cannot stand idly by while plaintiff turns to other forums which are unaware of his tactics to continue his abuse of the legal process. To do so would be to abdicate its judicial responsibility to safeguard such process from a disclosed pattern of utilization of continuing corrupt practices by a deceitful litigant.
A United States court has powers of an auxiliary nature under the "All Writs" Statute, 28 U.S.C. § 1651 to issue all writs not specifically provided for by statute "as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." Adams v. United States ex rel. McCann, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). Indeed, such "[p]rocedural instruments are means for achieving the rational ends of law." Id.
One such instrument is the mandatory injunction compelling a private party to take some affirmative act. See, e. g., Stern v. South Chester Tube Co., 390 U.S. 606, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968); Johnson v. Interstate Power Co., 187 F.Supp. 36 (D.S.D.1960). It is axiomatic that a mandatory injunction, like all such writs under 28 U.S.C. § 1651, is to be used only in extraordinary circumstances. Clearly, this case is one involving such circumstances. No comparable situation has been located by this Court where a pro se litigant, devious enough in most instances to avoid more expedient remedies such as res judicata, automatic dismissals with prejudice, see Supplemental File, Exhibit J, or the across-the-board imposition of a bar against further legal proceedings once the merits of an action have been determined, see Green v. Wyrick, 428 F.Supp. 732, 742-43 (W.D.Mo. 1976), and cases cited therein, can successfully prolong a cause of action through a series of autonomous courts and utilize tactics designed to harass both courts and defendants, all at public expense.
Therefore, this Court has promulgated a group of specific orders comprising a mandatory *1003 injunction against plaintiff under 28 U.S.C. § 1651 which, although mild in content, will do much to diminish the effectiveness of plaintiff's sport of hide-and-seek with the courts and defendants. In addition, although plaintiff is a full-time litigator, he, as a pro se litigant, is not bound by the Code of Ethics which governs the conduct of attorneys. Thus, these orders establish inter alia certain ethical standards of conduct which henceforth will be applicable to this plaintiff.
Accordingly, in every cause of action hereafter filed in any federal or state court, plaintiff is hereby ordered to satisfy the following requirements:
1. Because of plaintiff's misuse of the long-arm statute in a manner designed to avoid actual service of the complaint on the defendant(s), see Part III.B.2.c., supra, plaintiff hereafter shall, in addition to using the appropriate service of process mechanism, personally send a copy of the complaint or petition to the defendant(s) or defense counsel, if known, at its correct address and submit documentary evidence to the respective court in a supplemental pleading that the complaint or petition has been so received.
2. Because of plaintiff's acknowledged and deliberate failure to serve on certain defendants copies of pleadings filed with the court and his admitted willingness to certify falsely that such procedure has been done, see Part III.B.2.d., supra, plaintiff hereafter shall personally send to counsel of record for defendant(s) a copy of every pleading to be filed with the respective court and submit proof to the court at the time the pleading is submitted for filing that opposing counsel previously has received a copy of the pleading.
3. Because of plaintiff's lack of veracity and good faith as documented throughout this opinion, all pleadings hereafter submitted by plaintiff for filing shall be verified, as provided for in Fed.R.Civ.P. 11.
4. In view of the duplicative nature of much of plaintiff's litigation and his predictable failure to disclose to the court the existence of prior similar filings which would aid the court inter alia in its initial Section 1915(d) determination, see Part III. B.2.b., supra, plaintiff shall include in every complaint or petition hereafter filed a list, by style, docket number, court, date filed, description and disposition, of (1) all cases previously filed on the same, similar or related cause of action and (2) all actions previously filed against one or more of the defendants, including predecessors or successors in interest or office.
5. In order to assure the necessary dissemination of the List of Cases and other matters contained in this opinion, plaintiff shall include in every complaint or petition hereafter filed a statement which refers and cites to the instant order, including a citation to the Federal Supplement citation once available.
6. To ensure a minimal degree of judicial centralization and coordination as to this plaintiff beyond this District in accordance with the theory expressed by the Aldisert Committee, see Aldisert Report No. 2, at 45-49, and to provide a central depository and record of plaintiff's future case filings subsequent to the List of Cases which would be available to this and other courts for use in making inter alia a Section 1915 determination, plaintiff shall send a copy of every complaint or petition hereafter filed to the Staff Law Clerk, Southern District of Texas, Houston Division.
Additionally, plaintiff shall provide to this Court within sixty days a list, by style, docket number, court, date filed, description and disposition, of those causes of action, excluding mandamus petitions filed at the appellate level of the state and federal court and other appellate filings which are not included in the List of Cases in Part III.B.1., supra, and which plaintiff has filed in any court since 1960.
Failure of plaintiff to comply with any of the orders stated herein will subject him to imposition of an appropriate sanction, including further restrictions on the nature of his access to the courts.

*1004 V. CONCLUSION
The Fifth Circuit Court of Appeals has encouraged district courts to develop
"imaginative and innovative methods of dealing with the flood of prisoner complaints and suits, most of which are . . filed in forma pauperis."
Taylor v. Gibson, 529 F.2d 709, 717 (5th Cir. 1976). Utilizing the discretion provided for in Section 1915(d), this Court and District in prior opinions have addressed two special aspects of the overall prisoner litigation problem in accordance with this appellate mandate. See Braden v. Estelle, 428 F.Supp. 595 (S.D.Tex.1977); Hill v. Estelle, 423 F.Supp. 690 (S.D.Tex.1976). This opinion confronts an additional problem area which, because of the continuing bad faith and abuse involved, cries out for a full, effective solution.
As demonstrated in this opinion, Carter is a litigant without principle or any semblance of good faith who has taken full advantage of the liberal privileges routinely accorded pro se litigants proceeding in forma pauperis. Having heretofore escaped close scrutiny, he has exercised every effort to make a mockery of 28 U.S.C. § 1915 and the integrity of the judicial system.
Although an atypical prisoner litigant, Carter is not alone. Other inmates, while not as experienced in law and procedure as Carter, have made a hobby while in prison with little else to do of engaging in protracted federal court litigation at the expense of the federal government. To date, few controls have been placed on their efforts, chiefly because of the time required to piece together and compare the filings and practices of a single multiple filer in different courts, a lack of appellate guidance in this area and the difficulty in promulgating an effective remedy short of a total denial of access to the courts.
However, tighter controls such as those fashioned in this opinion are on the horizon as federal courts now begin to reach a plateau where, because of improvements in centralization proposed by the Aldisert Committee and made possible by the Staff Law Clerk program of the Federal Judicial Center as well as technical advancements such as LEXIS, they can attain for the first time an overview of the handiwork of these abusive multiple filers. See, e. g., Green v. Wyrick, 428 F.Supp. 732 (W.D.Mo.1976). As Judge Elmo B. Hunter set forth so cogently in that case with reference to inmate Green:
Moreover if the authorities and principles which have been cited do not constitute sufficient precedent for the issuance of an injunction in this case, it is time that such a precedent should be made. For, as this Court observed on an earlier occasion, unless the Courts of this nation are to be deemed to be powerless to stop such a flagrant abuse of the judicial process, one man will be able to preempt so much judicial time at the trial and appellate levels as to thwart the very ability of the judicial system to carry out its necessary judicial function of properly processing its criminal and civil docket of cases filed by other litigants who may have meritorious matters. The time clearly has come to take appropriate action to the end that Clovis Carl Green, Jr.'s history of intentional and gross abuse of the judicial process is terminated.
Id. at 743.

EXHIBIT 1
 NO. 893,613
 ALBERT H. CARTER IN THE DISTRICT COURT
 -vs- OF HARRIS COUNTY, TEXAS
 THE MONEY TREE COMPANY 189th JUDICIAL DISTRICT
 DEFENDANT'S ANSWER
 Comes now THE MONEY TREE COMPANY, defendant in this cause, by and
through its president, JOE SANDERS, and files this its answer to the petition
*1005
heretofore filed by plaintiff, ALBERT H. CARTER. Defendant hereby enters a
general demurrer on the ground that notwithstanding the truth of plaintiff's
allegations, he is a penitentiary inmate without any civil rights, and therefore has no
legal capacity to sue in any civil court, wherefore this suit should be summarily
dismissed.
 THE MONEY TREE COMPANY
 ______________________
 (s) Joe Sanders, President
 9741 James Avenue South
 Minneapolis, Minnesota 55431

EXHIBIT 2
 The Money Tree Company
 Experienced Specialists in Fund Raising
Phone: (612) 884-3554  9741 James Ave. So.  Minneapolis, Minnesota 55431
August 23, 1972
Mr. Ray Hardy
District Clerk
Houston, Texas 70002
Dear Mr. Hardy:
I received a copy of the Money Tree answer to Number 893613 that you were so kind
to send to me. I never received a copy of the so-called plaintiff's original petition
from your court and so knew nothing about any suit pending against The Money Tree
Company. My defendant's answer is a forgery and this is the first time that I have
seen it. Al Carter did his best to copy my signature and he thought he was writing
the initials of one of my secretaries (my daughter) but he should have remembered
that her initials were B.J.M. and not B.J.J. Mr. Carter has had legal training and
professes himself to be a legal expert as you can see by his actions.
Mr. Carter owes Money Tree Company about $3,000.00 because we paid him more
draw money than his commissions warranted over the 18 months from August 1969
until February 1971. In his petition, he failed to indicate that he was paid these
draws. In the second place, we are short over $9,000.00 worth of goods and can't
find where they went. We haven't attempted to collect the $3,000.00 from Mr.
Carter since he is in prison. Mr. Carter was never an employee of The Money Tree
Company. He was an independent contractor carrying several other lines, some in
competition to our products, as we discovered later, and some that we knew about.
Would your office please keep me informed of any further harassment on Mr.
Carter's part?
Sincerely,
THE MONEY TREE COMPANY
J. J. Sanders
President
JJS/ds

*1006 EXHIBIT 3
 NO. 888,166
ALBERT H. CARTER ) IN THE 190th DISTRICT COURT
 )
 -vs- )
 )
WIL E. SCHROEDER ) OF HARRIS COUNTY, TEXAS
 DEFENDANT'S ORIGINAL ANSWER
 Now comes the defendant in this suit, Wil E. Schroeder, and answers the First
Amended Petition filed by the plaintiff, Albert H. Carter.
 Defendant does not deny the plaintiff's contentions, nor even the amount of his
damages but, in fact, concedes the same. However, defendant enters a general
demurrer on the ground that the plaintiff is a convicted and imprisoned felon who
has no civil rights to sue in any civil court, therefore this court has no jurisdiction to
entertain this suit.
 Respectfully submitted,
 _______________________
 [s] Wil E. Schroeder
 Defendant
 P.O. Box 40410
 Houston, Texas 77040
cc: Mailed to plaintiff
 January 10, 1972

EXHIBIT 4
 NO. 893,617
ALBERT H. CARTER ) IN THE DISTRICT COURT
 )
 -vs- ) OF HARRIS COUNTY, TEXAS
 )
MASCO MECHANICAL ) 61st JUDICIAL DISTRICT
 CONTRACTORS, INC. )
 DEFENDANT'S ANSWER
 Comes now MASCO MECHANICAL CONTRACTORS, INCORPORATED, the
defendant in this lawsuit, by and through its President, Manuel Salinas, and answers,
the plaintiff's original petition in this action by filing a general demurrer on the
ground that although all of the facts and damages alleged by plaintiff are no doubt
true and correct, he is nevertheless a convict without any civil rights and because of
his status he has no legal right to file a civil lawsuit in this or any other court.
 Defendant therefore respectfully shows that this court must and should dismiss this
lawsuit summarily.
 MASCO MECHANICAL CONTRACTORS, INC.
 _____________________________
 [s] Manuel Salinas, President
cc: Albert H. Carter,
 Plaintiff
NOTES
[*] Consolidated with the following in which Albert H. Carter is the Plaintiff:

C. V. Kern, 72-H-344; Jack Heard, 74-H-42; V. Bailey Thomas, 75-H-21; W. J. Estelle, Jr., 75-H-314; Oscar S. Savage, 75-H-1679; Texas Agribusiness Co., 75-H-1992; Ray Hardy, 76-H-458; Carl O. Bue, Jr., 76-H-707; Thomas Reed, 76-H-1037; Ray Hardy, 76-H-1044; W.J. Estelle, Jr., 76-H-1342; V. Bailey Thomas, 76-H-1446; Edward W. Wadsworth, 76-H-1550; Edward Levi, 76-H-1655; John V. Singleton, Jr., 76-H-1663; Chipper's Nut Hut, Inc., G-77-8; Andrew Dolce, G-77-9; Clarence Kelley, G-77-10.
[1] Section 1915 of Title 28, United States Code, provides in pertinent part:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress."
* * * * * *
"(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."
[2] Carter has received favorable rulings on procedural points, particularly under Fed.R.Civ.P. 41 and the provisions covering dismissal with or without prejudice, see Carter v. Telectron, Inc., 554 F.2d 1369 (5th Cir. 1977); Carter v. United States, 547 F.2d 258 (5th Cir. 1977), and whether a complaint alleges facts sufficient to state a cause of action. See Carter v. Thomas, 527 F.2d 1332 (5th Cir. 1976); Carter v. Estelle, 519 F.2d 1136 (5th Cir. 1975).
[3] During a March, 1976, hearing before United States Magistrate Ronald J. Blask as a Special Master in Case List No. 30, the issue of plaintiff's state citizenship was addressed by the parties but not finally resolved.
[4] Although Local Rule 5 is couched in terms of placing the duty of notification of related litigation on each "attorney" appearing in a case before the court, the policy behind this rule of disclosure applies equally, if not more so, to non-attorney litigants who represent themselves.
[5] The Court takes judicial notice of a motion and certain attachments filed by the State of Texas on November 8, 1977, in the habeas corpus action of Carter v. Estelle, 74-H-1603, Case List No. 23, which alleges that Carter has utilized a forged psychiatric report which finds him incompetent to stand trial as a foundation for his contention that his 1962 federal perjury conviction is invalid because the report was suppressed. Certified copies of the pertinent court records, including the response filed by Carter's court-appointed attorney in that proceeding, are included in the Supplemental File as Exhibits S and T.
[6] One of the actions brought by plaintiff and dismissed by this Court on March 7, 1977, for failure to pay filing and service fees was Carter, et al v. Bue, et al, 76-H-707, Case List No. 132. On March 23, 1977, two weeks later, the action of Shipp, et al v. Bue, et al, H-77-467, was filed in the Court of the Honorable Woodrow Seals. Plaintiff Shipp not infrequently sues as a co-plaintiff with Carter. The Staff Attorney has brought to this Court's attention that, except for a refinement in the scope of the defendant class, the two complaints are virtually identical and raise the same ten narrow allegations of unlawful conduct on the part of the defendant class. See Supplemental File, Exhibits U and V. In addition to the complaint, plaintiff's Reply to Defendants' Motion to Dismiss is unmistakenly the work of plaintiff herein, possessing the characteristics in pleading form and content which distinguish the work of plaintiff. Thus, the Court is wholly cognizant of the device whereby plaintiff may utilize another inmate as a pleading conduit in an effort to escape detection and the orders contained in this opinion. Although the issue is not before the Court at this time, this Court in the future may be required to address the question of how to control this potential abuse, see Green v. Wyrick, 428 F.Supp. 732 (W.D.Mo.1976), including possible entry of an order that plaintiff disclose in the future those pleadings that he has helped to prepare.